06-2143-cv
Cordes & Co. v. A.G. Edwards & Sons, Inc.

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2006

(Argued: March 19, 2007       Decided: September 11, 2007
                              Errata Filed: September 27, 2007)
                   Docket No. 06-2143-cv

-----------------------------------------

CORDES & COMPANY FINANCIAL SERVICES, INC. and EQUALNET COMMUNICATIONS CORPORATION, on behalf of themselves and all others similarly situated,

Plaintiffs-Appellants,

- v -

A.G. EDWARDS & SONS, INC., BANCBOSTON ROBERTSON STEPHENS & COMPANY, BEAR STEARNS & CO., CHASE HAMBRECHT & QUIST, INC., CIBC OPPENHEIMER CORP., COWEN & CO., CREDIT SUISSE FIRST BOSTON CORPORATION, DB ALEX. BROWN LLC formerly known as BT ALEX BROWN INC., DONALDSON, LUFKIN & JENRETTE, INC., EVEREN SECURITIES, INC., THE GOLDMAN SACHS GROUP, INC., HANIFEN INHOFF INC., ING BARINGS LLC, J.C. BRADFORD & CO., J.P. MORGAN SECURITIES, INC., JEFFERIES & COMPANY, INC., JOHNSON RICE & COMPANY, LEGG MASON WOOD WALKER INC., LEHMAN BROTHERS INC., MERRILL LYNCH & CO., MORGAN STANLEY DEAN WITTER & CO., NATIONSBANC MONTGOMERY SECURITIES, PAINE WEBBER GROUP, INC., PIPER JAFFRAY & CO., INC., PRUDENTIAL SECURITIES INCORPORATED, RAYMOND JAMES & ASSOCIATES, INC., SALOMON SMITH BARNEY, INC. and UBS WARBURG LLC,

Defendants-Appellees.

-----------------------------------------

Before:   SACK, B.D. PARKER, and HALL, Circuit Judges.

Appeal from a Memorandum and Order of the United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) denying the plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23. We conclude that although the plaintiffs do not fall within the

definition of the class as set forth in the complaint, as assignees of class members who brought the suit, they are not categorically excluded from acting as class representatives.  We also conclude that the district court erred with respect to the basis on which it concluded that individual questions predominate over common ones.

Vacated and remanded.

ROGER W. KIRBY, Kirby McInerney & Squire LLP (Randall K. Berger, Henry P. Monaghan, of counsel), New York, NY, for Plaintiffs-Appellants.

ROBERT F. WISE, JR., Davis Polk & Wardwell (Edmund Polubinski III, Christopher Withers, Kavita Kumar, of counsel), New York, NY, for Defendant-Appellee Morgan Stanley (sued as Morgan Stanley Dean Witter & Co.).

James B. Weidner, Clifford Chance US LLP (Jon R. Roelke, Jeffrey H. Drichta, of counsel), New York, NY, for Defendants-Appellees Merrill Lynch, Pierce Fenner & Smith Incorporated, and Merrill Lynch & Co.

Gandolfo V. DiBlasi, Sullivan & Cromwell LLP (Steven L. Holley, Penny Shane, David Rein, of counsel), New York, NY, for Defendant-Appellee Goldman, Sachs & Co. (sued as The Goldman Sachs Group, Inc.).

Robert B. McCaw, Wilmer Cutler Pickering Hale and Dorr LLP (Ali M. Stoeppelwerth, Fraser L. Hunter, Jr., of counsel), New York, NY, for Defendant-Appellee Citigroup Global Markets, Inc. (sued as Salomon Smith Barney, Inc.).

Jay B. Kasner, Skadden, Arps, Slate, Meagher & Flom LLP (Shepard Goldfein, Gary A. MacDonald, of counsel), New York, NY, for Defendants-Appellees CIBC

2

World Markets Corp. (sued as CIBC Oppenheimer Corp.), ABN AMRO Inc. (as successor-in-interest to ING Barings LLC) and Cowen and Company, LLC (f/k/a SG Cowen & Co., LLC and SG Cowen Securities Corp.; sued as Cowen & Co.).

Gregory A. Markel, Cadwalader, Wickersham & Taft LLP (Ronit Setton, Amanda Kosowsky, of counsel), New York, NY, for Defendants-Appellees Banc of America Securities LLC (sued as NationsBanc Montgomery Securities) and Robertson Stephens, Inc. (sued as BancBoston Robertson, Stephens & Company).

Bradley J. Butwin, O'Melveny & Myers LLP, New York, NY, for Defendants-Appellees UBS Securities LLC f/k/a UBS Warburg, LLC (sued as UBS Warburg LLC), J.C. Bradford & Co. and UBS Financial Services Inc. f/k/a UBS PaineWebber Inc. (sued as Paine Webber Group, Inc.).

A. Robert Pietrzak, Sidley Austin LLP (Joel M. Mitnick, Benjamin R. Nagin, of counsel), New York, NY, for Defendant-Appellee Bear, Stearns & Co. Inc.

Thomas J. Kavaler, Cahill Gordon & Reindel LLP (Elai Katz, of counsel), New York, NY, for Defendant-Appellee Prudential Equity Group, LLC (sued as Prudential Securities Incorporated).

Joseph Ingrisano, Kutak Rock LLP (Robert A. Jaffe, of counsel), Washington, D.C., for Defendant-Appellee A.G. Edwards & Sons, Inc.

Charles E. Koob, Simpson Thacher & Bartlett LLP (Joseph F. Tringali, of counsel), New York, NY, for Defendants-Appellees Lehman Brothers Inc. and J.P. Morgan Securities Inc. (sued as Chase Hambrecht & Quist).

Jeremy G. Epstein, Shearman & Sterling LLP (Kenneth M. Kramer, Richard F. Schwed, of counsel), New York, NY, for

3

Defendants-Appellees Credit Suisse Securities (USA) LLC, f/k/a Credit Suisse First Boston LLC (sued as Credit Suisse First Boston Corporation) and Donaldson Lufkin & Jenrette, Inc.

Jay N. Varon, Foley & Lardner LLP (Samuel J. Winer, Bryan B. House, of counsel), Washington, D.C., for Defendants-Appellees EVEREN Securities, Inc., Raymond James & Associates, Inc. and Piper Jaffray & Co. (sued as U.S. Bancorp Piper Jaffray Inc.).

Douglas A. Rappaport, DLA Piper US LLP (Lewis A. Noonberg, Philip Huynh, of counsel), New York, NY, for Defendant-Appellee Deutsche Bank Securities, Inc. (sued as BT Alex. Brown).

Bernard J. Garbutt III, Morgan Lewis & Bockius LLP (Leza M. DiBella, of counsel), New York, NY, for Defendant-Appellee Jefferies & Company, Inc.

Charles O. Monk II, Saul Ewing LLP (Joseph M. Fairbanks, of counsel), Baltimore, MD, for Defendant-Appellee Legg Mason Wood Walker, Inc.

David Radlauer, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, L.L.P. (Mark A. Cunningham, of counsel), New Orleans, LA, for Defendant-Appellee Johnson Rice & Company.

L. Norton Cutler, Perkins Coie, LLP, Denver, CO, for Defendant-Appellee Hanifen Imhoff Inc.

SACK, Circuit Judge:

The first of the named plaintiffs in this lawsuit -- Cordes & Company Financial Services, Inc. ("Cordes") -- is the assignee of an antitrust claim against the defendants formerly asserted by Western Pacific Airlines Inc. ("Western Pacific"). The interests in this litigation of the second named-plaintiff --

4

EqualNet Communications Corporation ("EqualNet") -- are being pursued by the Unsecured Creditors Trust ("Creditors Trust") of a subsidiary of EqualNet: EqualNet Corp. ("EN"). Creditors Trust acquired a two-thirds stake in any proceeds EqualNet obtains through this lawsuit. The plaintiffs allege in their Consolidated Class Action Complaint (the "Complaint") that the defendants, who are initial public offering ("IPO") underwriters, violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to charge all corporations conducting mid-size IPOs who used their services a fee equal to seven percent of the proceeds of the offering. Cordes and Creditors Trust sought class certification pursuant to Federal Rule of Civil Procedure 23.

The United States District Court for the Southern District of New York (Lawrence M. McKenna, Judge) denied the motion for class certification because, it concluded, two Rule 23 requirements -- the adequacy requirement of Rule 23(a)(4) and the predominance requirement of Rule 23(b)(3) -- were not met.

Rule 23(a)(4) provides that it is a prerequisite to pursuit of an action as a class that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The district court reasoned that because Cordes and Creditors Trust are assignees of the entities that instituted this lawsuit and are not themselves members of the putative class, they are not qualified to act as representatives of the class. For reasons set forth below, we think that the fact that the assignee-plaintiffs do not

5

themselves fall within the definition of the class as set forth in the Complaint does not, ipso facto, foreclose their ability to act as class representatives in lieu of the entities that originally brought the claims, both of them members of the class. On remand, the district court should decide whether, on the facts presented in this case, Cordes and Creditors Trust are each adequate representatives of the class.

Rule 23(b)(3) requires, inter alia, that for a lawsuit to be pursued as a class action, "the questions of law or fact common to the members of the class [must] predominate over any questions affecting only individual members . . . ." Fed. R. Civ. P. 23(b)(3). The district court concluded that the plaintiffs failed to establish that this litigation meets that requirement because they did not offer evidence to establish that antitrust injury -- one of the elements of the antitrust claim alleged in the Complaint -- could be proved by a method common to the class.

The antitrust injury element raises both factual questions related to whether the plaintiff has suffered harm and legal questions related to whether that harm is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977). We think that the district court should have distinguished between antitrust injury's factual questions -- as to which both parties offered evidence -- and its legal questions -- as to which neither party

6

offered evidence.  We conclude, for reasons set forth below, that the legal questions raised by the antitrust injury element of this case are common to the class.  On remand, the district court should therefore decide whether the factual questions are common to the class.  And if the court determines that the factual questions relevant to antitrust injury here are individual to each class member, the court should then determine (1) whether common questions nonetheless predominate, and (2) whether certification of a part of the case would be appropriate even if certification of the whole would not be.

## BACKGROUND

Cordes, the first named-plaintiff, purchased the interest supporting its claim in this lawsuit from the bankruptcy estate of Western Pacific.  In 1995, Western Pacific engaged in an IPO of its capital stock, the proceeds of which were approximately $47 million.  Two years later, Western Pacific filed for Chapter 11 bankruptcy protection in the United States Bankruptcy Court for the District of Colorado.  In 1998, that proceeding was converted to a liquidation proceeding under Chapter 7.  In 2001, the trustee of the estate in bankruptcy filed a complaint in this action in the United States District Court for the Southern District of New York.  The trustee alleged that beginning in the mid-1990s, the defendants, investment banks that had underwritten mid-size IPOs, engaged in a horizontal price-fixing scheme of which Western Pacific was a victim during the course of its IPO.  In 2004, the bankruptcy court entered an

7

order permitting Western Pacific's Chapter 7 trustee to sell by auction Western Pacific's claim and interest in the antitrust litigation. The bankruptcy court required, inter alia, that the winning bidder be willing to act as a named class representative. Cordes acquired Western Pacific's claim and interest, with the approval of the bankruptcy court, for $11,000. The instrument memorializing Western Pacific's assignment of its claim stated that Cordes agreed to pursue the litigation in good faith as a named class representative.

In 1995, EqualNet, the second named-plaintiff, held an IPO of its capital stock. It, too, subsequently filed for bankruptcy protection under Chapter 11. The United States Bankruptcy Court for the Southern District of Texas converted the Chapter 11 proceeding to Chapter 7. EN, EqualNet's subsidiary, also filed for bankruptcy, which resulted in the formation of Creditors Trust. Creditors Trust, which is pursuing EqualNet's former claims, acquired a two-thirds interest in EqualNet's potential recovery in this case by foreclosing on security interests that EN held in certain assets of EqualNet.

The plaintiffs allege in the Complaint that the defendants, IPO underwriters, fixed their underwriting fees at seven percent of the IPO proceeds for all corporations conducting mid-size IPOs -- i.e., IPOs generating between $20,000,000 and $80,000,000 in proceeds. They assert that the defendants thereby

violated Section 1 of the Sherman Act, 15 U.S.C. § 1.[1]  More than ninety percent of issuers of mid-size IPOs since 1994 were, according to the Complaint, charged such a fee in that amount. The plaintiffs further allege that IPOs are managed by a syndicate of underwriters, each of which has a lead manager and several co-managers.  Because each defendant participated as lead manager for some IPOs and as co-manager for others, each was allegedly able to monitor the fees charged by other defendant underwriters.  The plaintiffs also submitted expert testimony to support their allegations that the defendants entered into a horizontal price-fixing agreement and have been able to enforce it.

> Western Pacific and EqualNet brought the lawsuit pursuant to Rule 23 of the Federal Rules of Civil Procedure, on their own behalf and as representatives of a class . . . of all corporations and other entities (excluding defendants and their respective parents, subsidiaries and affiliates and issuers of government securities) who, during the [period from at least January 1994 through the present], issued an initial public offering of securities with an aggregate value between $20 million and $80 million using the services of any defendant.

Compl. ¶ 50.  After the assignment of Western Pacific's and EqualNet's claims and interests in this litigation, Cordes and

---

[1] Section 1 of the Sherman Act makes illegal any "contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . . ."  15 U.S.C. § 1.

9

Creditors Trust filed a motion to certify a class of plaintiffs pursuant to Rule 23.

Cordes and Creditors Trust submitted a declaration of their expert, Gustavo Bamberger, in an attempt to establish that they could prove the elements of their claim by common proof and that those elements are predominant, as required for certification under Rule 23(b)(3). Bamberger reported that he had been asked whether he could measure the damages suffered by each class member "by the use of a formula common to all class members." Bamberger Decl. ¶ 3, Sept. 16, 2004. He responded in the affirmative. Id. Damages in this case were, he said, the difference between the fee actually paid and the "but-for fee" -- the fee that would have been charged to the putative class members in connection with the IPO in the absence of the alleged conspiracy. Id. at ¶ 8. Bamberger asserted that he could devise a common formula for deriving the but-for fee by (1) establishing a benchmark fee from a set of prices paid in temporal or geographic isolation from the conspiracy, and (2) applying a multiple regression analysis to isolate the "explanatory variables" that influence the benchmark fee. Id. ¶¶ 9, 16. The but-for fee for each class member could then be determined by substituting the appropriate values for the explanatory variables. Id. ¶¶ 20-24.

The defendants countered with an expert report prepared by Robert D. Willig (the "Willig Report"). The defendants asked Willig "whether the plaintiffs' allegations that members of the

10

proposed issuer class have been injured by the alleged price-fixing conspiracy are capable of being proved on a common basis for the purported class members." Willig Report at 2. Willig asserted in response that in order to determine whether a class member was injured, one must first determine the "but-for gross spread" -- that is, the fee that the underwriter would have charged but for the conspiracy. Id. at 11-12. But, according to Willig, calculating the but-for gross spread requires an individualized, plaintiff-by-plaintiff analysis of ten factors, including underwriter costs, price stabilization, and the risk of the offering.

The district court denied certification. The court first determined that neither Cordes nor Creditors Trust satisfied the adequacy prerequisite of Rule 23(a)(4). The court noted that "a class representative must be a member of the class" and that both Cordes and Creditors Trust were assigned their interests in the litigation. In re Pub. Offering Fee Antitrust Litig., 2006 WL 1026653, at *2-*3, 2006 U.S. Dist. LEXIS 21076, at *9, *11-*13 (S.D.N.Y. Apr. 18, 2006) (the "District Court Opinion"), amended by 2006 WL 1120498, 2006 U.S. Dist. LEXIS 24321 (S.D.N.Y. Apr. 26, 2006). Assuming for purposes of its analysis that Cordes and Creditors Trust met the other class certification qualifications, it ruled that they were not members of the proposed class and thus could not represent it. Id. at *4, 2006 U.S. Dist. LEXIS 21076, at *13. Treating class membership as a transferable asset could, in the words of the

11

court, "lead to a very serious problem indeed in the class action field." Id. at *4, 2006 U.S. Dist. LEXIS 21076, at *13-*14.

The district court concluded further that Rule 23(b)(3)'s predominance requirement also had not been met. Cordes and Creditors Trust argued that because their expert had provided a formula for assessing damages for all class members, they had also established that they would be "able to prove antitrust impact by common proof." Id. at *8, 2006 U.S. Dist. LEXIS 21076, at *26-*27. The district court rejected this argument because the "plaintiffs [were] ignoring the distinction between antitrust injury or impact, on the one hand, and damages, on the other." Id., 2006 U.S. Dist. LEXIS 21076, at *26. Each expert had "been asked, and ha[d] answered, meaningfully different questions." Id., 2006 U.S. Dist. LEXIS 21076, at *27. Although the court "[a]ccept[ed] both opinions as 'not fatally flawed' and 'sufficiently reliable,'" only the defendants' expert's analysis, the court concluded, "addresses the question before the Court -- which is whether antitrust injury or impact can be proved by evidence common to the class." Id., 2006 U.S. Dist. LEXIS 21076, at *27-*28 (quoting In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 135 (2d Cir. 2001) ("Visa Check")).[2] "The questions are different," the court

[2] In In re Initial Pub. Offering Sec. Litig., 471 F.3d 24 (2d Cir. 2006), decided after the district court's ruling, we perceived "a major shift away from the . . . 'not fatally flawed' language of . . . Visa Check." Id. at 37. "[W]e can no longer continue to advise district courts that . . . an expert's report will sustain a plaintiff's burden so long as it is not 'fatally

12

continued, "because there is considerabl[y more] leeway allowed in proving damages, once antitrust liability is established, than is permitted in proving antitrust liability." Id., 2006 U.S. Dist. LEXIS 21076, at *28.

Cordes and Creditors Trust, relying on Visa Check, also argued that certification was appropriate because common questions regarding the nature of the conspiracy in a price-fixing case predominate over all other questions, including those regarding injury. The court concluded, however, that Visa Check supported only the proposition that the need for individualized inquiry into damages should not prevent certification of a class with common questions on liability.[3] Based on its conclusion that Cordes and Creditors Trust did not establish that in this case there are common questions on liability, the district court rejected this argument, too.

Cordes and Creditors Trust petitioned this Court, pursuant to Fed. R. Civ. P. 23(f), to hear an interlocutory appeal of the denial of class certification. On August 1, 2006, a panel of this Court granted the petition.

**DISCUSSION**

flawed . . . .'" Id. at 40. The use of the phrase by the district court does not affect our analysis, however, and we therefore do not address it further.

[3] Cordes and Creditors Trust contended, as they do on appeal, that when faced with allegations of a horizontal price-fixing conspiracy, we should presume that the entire class suffered antitrust injury. We need not evaluate that argument in order to resolve the merits of this appeal, and therefore express no view as to it.

13

## I. Standard of Review

We review a district court's denial of class certification for abuse of discretion. In re Initial Pub. Offering Sec. Litig., 471 F.3d 24, 31 (2d Cir. 2006) ("IPO Securities"). We also apply abuse of discretion review to a district court's "subsidiary rulings on each of the six requirements for a Rule 23(b)(3) class." Id. at 31-32. "A district court by definition abuses its discretion when it makes an error of law." Koon v. United States, 518 U.S. 81, 100 (1996). Findings of fact upon which the district court bases a Rule 23 determination are reviewed for clear error; legal conclusions de novo. See IPO Securities, 471 F.3d at 40-41.

## II. Denial of Class Certification

Two questions are presented to us on this interlocutory appeal: (A) whether the district court misconstrued Rule 23(a)'s adequacy requirement, and (B) whether it misconstrued Rule 23(b)(3)'s predominance requirement, adversely in each case to Cordes and Creditors Trust.

## A. Prerequisites to a Class Action -- Adequacy of Representation

Rule 23(a) sets forth four "[p]rerequisites to a [c]lass [a]ction":

> (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical . . . of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

14

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Fed. R. Civ. P. 23(a)). The defendants do not contest that the first three prerequisites are met here. We therefore confine our consideration to the fourth -- adequacy of representation. Determination of adequacy typically "entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000). This process "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625.

The district court did not find it necessary to engage in either part of the typical inquiry. The court decided that, irrespective of whether Cordes and Creditors Trust could satisfy the *Baffa* factors, they cannot be representatives of the class because they do not themselves fit within the definition of the class as set forth in the Complaint.

> It is plain that Cordes and the Creditors Trust are not members of the proposed issuer class and that, as a consequence -- and assuming *arguendo* that they meet the other qualifications for class representation -- they cannot represent the issuer class.
> Plaintiffs in response cite the undisputed proposition that antitrust claims are assignable. That is beside the point. To allow Cordes or the Creditors Trust to represent the proposed class would, in effect, treat class membership as a transferable asset, and that could plainly

15

lead to very serious problems indeed in the class action field.

*District Court Opinion*, 2006 WL 1026653, at *4, 2006 U.S. Dist. LEXIS 21076, at *13-*14 (footnote omitted).

The defendants urge us to adopt the district court's conclusion, arguing (1) that Cordes and Creditors Trust are not themselves members of the defined class; (2) in light of the general principle that only a class member can adequately represent the class, Cordes and Creditors Trust cannot represent the class; and (3) "to allow the class action device to become a mechanism for trafficking in litigation would fundamentally undermine the administration of justice in federal courts." Def. Br. at 18. We disagree.

1. The Ability of Assignees to Serve as Class Representatives. "To have standing to sue as a class representative it is essential that a plaintiff . . . be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." Schlesinger v. Reservists Comm. to Stop the War, 418 U.S. 208, 216 (1974) (citations omitted); see also Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 156 (1982) (quoting Schlesinger, 418 U.S. at 216). When Western Pacific and EqualNet brought this lawsuit as putative class representatives, see Complaint ¶ 50, they were indisputably members of the class they sought to represent. We conclude that the subsequent assignment of their claims and interests in this litigation to Cordes and

16

Creditors Trust, respectively, did not deprive Cordes and Creditors Trust of the ability, as assignees, to continue to seek recognition as representatives of the class.

### a. Cordes and Creditors Trust's standing to pursue these claims as a class action.

The defendants do not contest the validity of the assignments of the bankrupts' antitrust claims to Cordes and Creditors Trust in this instance.[4]  See Def. Br. at 23; see also D'Ippolito v. Cities Serv. Co., 374 F.2d 643, 647 (2d Cir. 1967) ("Antitrust claims have been held assignable.").  It is undisputed that Cordes and Creditors Trust acquired through Western Pacific's and EqualNet's bankruptcy proceedings all or a portion of whatever substantive rights Western Pacific and EqualNet held at the time of their respective bankruptcies to recover for the injuries alleged in the Complaint.[5]

---

[4] The trustee of an estate in bankruptcy under Chapter 7 is required to "collect and reduce to money the property of the estate . . . and close such estate as expeditiously as is compatible with the best interests of parties in interest."  11 U.S.C. § 704(a)(1).  "Under 11 U.S.C. § 541, the rights of action of the debtor pass to the estate created by the commencement of the bankruptcy proceeding . . . ."  Mitchell Excavators, Inc. by Mitchell v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984).  The trustee may "reduce to money" the "rights of action of the debtor" by litigating them on behalf of the estate, or, as the defendants concede, by assigning the rights of action to third parties.  See Def. Br. at 23; see also Integrated Solutions, Inc. v. Serv. Support Specialties, Inc., 124 F.3d 487, 493-95 (3d Cir. 1997) (recognizing that property in the bankrupt's estate is alienable insofar as it would have been alienable outside the bankruptcy context).

[5] As the defendants put it in their brief:

> The district court did not suggest that [Cordes, as] an owner of a claim by

17

Nevertheless, the defendants argue, because neither Cordes nor Creditors Trust is itself a member of the class as pleaded, neither has standing to act as a class representative.

Standing has both constitutional dimensions rooted in Article III's Case or Controversy Clause[6] and prudential dimensions that are "closely related to Art. III concerns but [are] essentially matters of judicial self-governance." Warth v. Seldin, 422 U.S. 490, 498-500 (1975). The rule that "a class representative must be part of the class," Falcon, 457 U.S. at 156 (citation and internal quotation marks omitted), is one of prudential standing, related to the broader principle that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal

> assignment[,] does not possess a right to bring suit individually to recover the proceeds of [its] claim. Nor do plaintiffs contend that the district court's order bars them from proceeding individually or receiving the proceeds to which their assignors would be entitled should there be a class recovery. Thus, the district court did not affect any substantive right to recovery that they acquired by assignment.

Def. Br. at 23 (footnote omitted; emphasis in original).

[6] Several doctrines "'cluster about Article III -- not only standing but mootness, ripeness, political question, and the like . . . .'" Allen v. Wright, 468 U.S. 737, 750 (1984) (quoting Vander Jagt v. O'Neill, 699 F.2d 1166, 1178-79 (D.C. Cir. 1983)). Article III standing, which is "perhaps the most important of these doctrines," id., requires, at an "irreducible constitutional minimum," that the plaintiff suffered injury-in-fact, "fairly traceable" to the defendant's acts, and redressable by a decision in the plaintiff's favor, in order for a federal court to address the dispute, Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and brackets omitted).

18

rights or interests of third parties," Warth, 422 U.S. at 499; see also Allen v. Wright, 468 U.S. 737, 751 (1984) (recognizing "the general prohibition on a litigant's raising another person's legal rights" as one of "several judicially self-imposed limits on the exercise of federal jurisdiction").  This principle requires in the class action setting that "[a]n individual litigant seeking to maintain a class action . . . meet 'the prerequisites of numerosity, commonality, typicality, and adequacy of representation' specified in Rule 23(a)." Falcon, 457 U.S. at 156 (quoting Gen. Tel. Co. of N.W., Inc. v. EEOC, 446 U.S. 318, 330 (1980)).  "These requirements effectively 'limit the class claims to those fairly encompassed by the named plaintiff's claims.'" Id. (quoting Gen. Tel. Co. of N.W., Inc., 446 U.S. at 330); see also id. ("'[A] class representative must be part of the class and "possess the same interest and suffer the same injury" as the class members.'" (quoting East Tex. Motor Freight Sys. v. Rodriguez, 431 U.S. 395, 403 (1977) (quoting Schlesinger, 418 U.S. at 216))).[7]

---

[7] In some circumstances, requiring class representatives to be members of the class may also ensure that the litigation complies with Article III limits on federal jurisdiction.  The Supreme Court referred to a possible connection between standing to represent a class, Rule 23(a), and Article III standing in Kremens v. Bartley, 431 U.S. 119, 131 n.12 (1977).  See also O'Shea v. Littleton, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." (citing, inter alia, Bailey v. Patterson, 369 U.S. 31, 32-33 (1962))); Lynch v. Baxley, 744 F.2d 1452, 1456 (11th Cir. 1984) ("If the named plaintiff seeking to represent a class fails to establish the requisite case or controversy, he may not seek

We return, then, to the basic principle that "[t]o have standing to sue as a class representative it is essential that a plaintiff must be a part of that class, that is, he must possess the same interest and suffer the same injury shared by all members of the class he represents." Schlesinger, 418 U.S. at 216 (citations omitted); see also Fed. R. Civ. P. 23(a) (providing that "[o]ne or more members of a class may sue or be sued as representative parties" only if the four prerequisites of subsection (a) are met). Western Pacific and EqualNet were both members of the class. As a result of Western Pacific's and EqualNet's assignments of their respective claims and interests in this litigation to Cordes and Creditors Trust, Cordes and Creditors Trust stood before the district court in the shoes of Western Pacific and EqualNet, for the purposes of this litigation, as assimilated members of the class. By virtue of the assignments, they do, as Western Pacific and EqualNet did, possess the same interest and thus may continue to assert a claim for the same injury shared by all members of the class.

The fundamental requirement, in other words, is that the "class claims [be] 'fairly encompassed' within" the representative's claims. Falcon, 457 U.S. at 158. The claims of Cordes and Creditors Trust, premised as they are on the harms

relief on his behalf or on that of the class." (citing O'Shea, 414 U.S. at 494)); DuPree v. United States, 559 F.2d 1151, 1153 (9th Cir. 1977) ("When the suit takes the form of a class action, Article III requires that the representative or named plaintiff must share the same injury . . . ." (citing Warth, 422 U.S. at 502)).

20

allegedly suffered by Western Pacific and EqualNet, "fairly encompass" the claims of the class. Reasons of efficiency and economy that permit claims to be pursued as part of a class action in the first place do not vanish as a result of the assignments. As assimilated class members by virtue of the assignments, Cordes and Creditors Trust have standing to pursue the assigned claims as class representatives.

Finally, we do not think that allowing Cordes and Creditors Trust to serve as class representatives threatens the district court's power under Article III to hear this dispute. The assignment of a claim from a person who suffered an injury to someone who did not does not make the claim any less a "case or controversy" which the courts have the constitutional capacity to resolve. It is indeed commonplace for an assignee to institute or continue an action of his or her assignor on an assigned claim even though he or she, apart from the assignment, is without standing, and the court, apart from the assignment, would be without power to decide the case. See, e.g., Fed. R. Civ. P. 25(c) (providing that in the case of "any transfer of interest, the action may be continued by or against the original party" or, upon motion, by or against the transferee); Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP, 322 F.3d 147, 156 (2d Cir. 2003) ("As assignee of the Color Tile bankruptcy estate, Color Tile Committee 'stands in the shoes of [Color Tile] and has standing to bring any suit that [Color Tile] could have instituted had it not petitioned for

21

bankruptcy.'" (citation omitted)).  Similarly, an assignment of a class claim by a person who purports to be a class representative does not render the claim less amenable to resolution as a class action, nor class action treatment less beneficial to the litigants, after the transfer of the asserted cause or causes of action than before.

### b. The perils of permitting assignee-plaintiffs to represent the class.

The defendants argue that as assignees, Cordes and Creditors Trust are not "squarely aligned in interest with the represented group."  Def. Br. at 20 (quoting Benjamin Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L. Rev. 356, 387 n.120 (1966)) (internal quotation marks omitted).  They characterize Cordes and Creditors Trust as "textbook examples of the 'very serious problems' referenced by the district court that would ensue if the ability to serve as a class representative could be treated 'as a transferrable asset.'"  Id. at 25 (quoting District Court Opinion, 2006 WL 1026653, at *4, 2006 U.S. Dist. LEXIS 21076, at *14).  They explain in some detail why, in their view, Cordes's and Creditors Trust's interests are antagonistic to interests of the class and why they are otherwise deficient as class representatives.  Id. at 25-30.  Irrespective of the extent to which Cordes's and Creditors Trust's interests are or are not in fact antagonistic to the interests of other members of the class in this particular case -- a matter on which it is

22

premature for us to express a view -- we do not think that they are _necessarily_ antagonistic _solely_ because Cordes and Creditors Trust are assignees of Western Pacific's and EqualNet's interests in the class action that they are pursuing.

The asserted unhappy consequences of permitting "trafficking" (to use the defendants' characterization) in causes of action, thereby permitting one person who has suffered no injury to pursue actions in the stead of another solely to maximize his or her personal monetary return, are not fanciful. The aversion to such assignments, because of their potential use by "intermeddle[rs to] stir up litigation for the purpose of making a profit," Accrued Fin. Servs., Inc. v. Prime Retail, Inc., 298 F.3d 291, 298 (4th Cir. 2002), has been reflected from time immemorial in the laws of champerty and its kin.[8] See In re

---

[8]

> Commentators have traced the doctrine of champerty, and its doctrinal near-cousins of maintenance and barratry, back to Greek and Roman law, through the English law of the Middle Ages, and into the statutory or common law of many of the states. See generally, Susan Lorde Martin, Syndicated Lawsuits: Illegal Champerty or New Business Opportunity?, 30 Am. Bus. L.J. 485, 486-89 (1992); Max Radin, Maintenance by Champerty, 24 Cal. L. Rev. 48, 48-66 (1936).

Elliott Assocs., L.P. v. Banco de la Nacion, 194 F.3d 363, 372 (2d Cir. 1999). Champerty, a tort governed largely by state law, has been narrowed to focus on the prevention of litigation by lawyers for the primary purpose of recovering their costs and fees. See, e.g., id. at 374 (recognizing that the object of New York's champerty statute is "'to prevent attorneys, etc., from purchasing things in action for the purpose of obtaining costs by the prosecution thereof, and it was not intended to prevent a purchase for the purpose of protecting some other right of the assignee'" (quoting Moses v. McDivitt, 88 N.Y. 62, 65 (1882)).

23

*Primus,* 436 U.S. 412, 424 n.15 (1978) ("[P]ut simply, . . . champerty is maintaining a suit in return for a financial interest in the outcome . . . .").

The purchasing of claims, whether before or after suit has been brought upon them, for the purpose of turning a profit is nonetheless not categorically forbidden. See Advanced Magnetics, Inc. v. Bayfront Partners, Inc., 106 F.3d 11, 17 (2d Cir. 1997) ("In general, claims or choses in action may be freely transferred or assigned to others."); see also Elliott Assocs., L.P. v. Banco de la Nacion, 194 F.3d 363, 372 (2d Cir. 1999). To the contrary, such assignments are widely permitted, presumably in order to allow holders of claims to transfer the risk of loss to someone better able or more willing to pursue the claim or to undertake the risk. Valid claims otherwise lost may thus be salvaged.

The defendants' arguments and the district court's conclusions as to the transferability of the ability to represent a class fail to account for the countervailing value of allowing an assignee to stand in the shoes of the assignor before a court. This case might be termed a "textbook example" of that value in the bankruptcy context inasmuch as the assignments pursuant to which Cordes and Creditors Trust are litigating this case promoted the winding up of complicated estates in bankruptcy to the benefit of creditors. We see nothing about the perils of claim assignment in the context of class membership and class representation that is qualitatively different from similar

24

dangers that inhere in permitting the pursuit of assigned legal claims generally, which, as we have noted, is allowed.

We conclude that Cordes and Creditors Trust, pursuing their claims and interests as assignees of the claims brought by, and interests in this litigation of, purported members of the class seeking to act as class representatives, are not excluded, for that reason alone.

2.  The Determination of Adequacy of Representation. That is hardly the end of the matter.  As with any class member seeking to act as a class representative, Cordes and Creditors Trust must demonstrate that "1) [their] interests are [not] antagonistic to the interest of other members of the class and 2) [their] attorneys are qualified, experienced and able to conduct the litigation."  Baffa, 222 F.3d at 60.  In light of its categorical approach to Rule 23(a)(4)'s adequacy requirement, the district court has not addressed these questions.  For some of the reasons advanced by the defendants in support of their assertion that assignees can never act as class representatives, Cordes, Creditors Trust, or both, may in fact not be adequate class representatives here.  If, for example, either is not sufficiently "'aligned in interest with the represented group,'" Def. Br. at 20 (citation omitted), see also id. at 28-33, or has insufficient knowledge or access to information, id. at 26-28, it may not qualify.  But we are in no position, and therefore decline, to make that determination in the first instance.  We

mean to imply no views on the question.  We leave the matter to the sound discretion of the district court on remand.[9]

## B.  Predominance

If this lawsuit meets the "prerequisites" of a class action under Rule 23(a), it must then also "qualif[y] under at least one of the categories provided in Rule 23(b)" before it may be certified as a class action.  Visa Check, 280 F.3d at 133.  Cordes and Creditors Trust assert that this action qualifies under the third Rule 23(b) category, where, although class treatment is not necessary to avoid adjudications mandating inconsistent standards of conduct under Fed. R. Civ. P. 23(b)(1), or to remedy class-based discrimination under Fed. R. Civ. P. 23(b)(2), "class suit [is] nevertheless . . . convenient and desirable," Amchem, 521 U.S. at 615 (internal quotation marks and citation omitted).

To qualify for class treatment, then, the proposed class must meet the requirement of predominance -- that is, that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members" -- and the requirement of superiority -- that is, "that

_____

[9]  Of course, if the district court certifies the class after a determination that either or both of the plaintiffs are adequate class representatives, it can always alter, or indeed revoke, class certification at any time before final judgment is entered should a change in circumstances render the plaintiffs inadequate class representatives.  Fed. R. Civ. P. 23(c)(1); see also Visa Check, 280 F.3d at 141 (recognizing a district court's ability to modify a class certification order or decertify a class if it becomes necessary to do so).

26

a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).[10]  The predominance requirement on which we focus -- together with the requirement of "superiority," which has not been separately challenged on this appeal -- ensures that the class will be certified only when it would "achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Amchem, 521 U.S. at 615 (citation and internal quotation marks omitted).

---

[10]    Rule 23(b)(3) provides:

An action may be maintained as a class action if the prerequisites of [Rule 23](a) are satisfied, and in addition:

. . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

27

The district court began with the notion that "[i]n order to prevail on their price-fixing claims, plaintiffs must demonstrate: (1) a violation of the antitrust laws by defendants; (2) some injury to plaintiffs' business or property as a result of the violation (causation or impact) and (3) the amount of damages sustained by the plaintiffs." District Court Opinion, 2006 WL 1026653, at *5, 2006 U.S. Dist. LEXIS 21076, at *16 (quoting In re Indus. Diamonds Antitrust Litig., 167 F.R.D. 374, 381 (S.D.N.Y. 1996)) (citation and internal quotation marks omitted). We have stated the point somewhat differently: "[T]he three required elements of an antitrust claim [are] (1) a violation of antitrust law; (2) injury and causation; and (3) damages . . . ." Visa Check, 280 F.3d at 136.

There is no controversy here regarding the first Visa Check element. Horizontal price-fixing agreements are per se violations of the Sherman Act. See generally United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 210-28 (1940). Cordes and Creditors Trust's allegations of the existence of a price-fixing conspiracy are susceptible to common proof and, if proven true, would satisfy the first element of the plaintiffs' antitrust cause of action.

The second element -- whether termed "antitrust injury," "causation or impact," or "injury and causation" -- is more complicated.

1. Does Antitrust Injury Pose Common or Individual Questions? Section 4 of the Clayton Act provides that "any

person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . ." 15 U.S.C. § 15(a). This has been read to require that to prevail in an antitrust suit, a plaintiff "must prove [that it has suffered] antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc., 429 U.S. 477, 489 (1977) (emphasis added).

In Brunswick, the defendant, Brunswick, had purchased a nearly bankrupt bowling alley, thus keeping the purchased business alive. The plaintiffs, Pueblo Bowl-O-Mat and other rival bowling alleys, sought to challenge the purchase because it kept their competitor in business. See id. at 480-81. Plaintiffs doubtless suffered real harm -- they had lost the "income that would have accrued had the acquired centers gone bankrupt," id. at 487, but this was insufficient to meet the antitrust injury requirement. The damages recovered in such a case would have given Pueblo Bowl-O-Mat and the other plaintiffs

> the profits they would have realized had competition been reduced. The antitrust laws, however, were enacted for "the protection of competition not competitors," Brown Shoe Co. v. United States, 370 U.S. [294, 320 (1962)]. It is inimical to the purposes of these laws to award damages for the type of injury claimed here.

Brunswick, 429 U.S. at 488.

29

Similarly, in Atlantic Richfield Co. v. USA Petroleum Co., 495 U.S. 328 (1990), independent gas stations could not recover from a gasoline producer that had allegedly fixed the maximum resale prices its affiliated gas stations could charge. The lower prices that resulted from the scheme had pro-competitive, not anti-competitive, effects in the markets in which the plaintiffs were engaged. See id. at 335-41 (reasoning that non-predatory price competition is pro-competitive with respect to other suppliers of the same goods or services); cf. id. at 345 (noting that even though competitors could not show that they suffered antitrust injury because of their rival's vertical price-fixing scheme, "consumers and the manufacturers' own dealers may bring suit").

Rule 23(b)(3) requires that the district court determine what "questions of law or fact [are] common to the members of the class." Fed. R. Civ. P. 23(b)(3) (emphasis added). Insofar as Rule 23(b)(3) is concerned, and in light of Brunswick and Atlantic Richfield, we think that the second element of an antitrust cause of action -- "antitrust injury" -- poses two distinct questions. One is the familiar factual question whether the plaintiff has indeed suffered harm, or "injury-in-fact." The other is the legal question whether any such injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick, 429 U.S. at 489.

Rather than relying on the distinction between the legal and factual questions raised by the antitrust injury element of an antitrust suit, the district court focused on the distinction between antitrust injury and damages. See Visa Check, 280 F.3d at 136. It accurately noted that the plaintiffs' expert, Bamberger, was asked to opine as to damages and the defendants' expert, Willig, as to injury. Compare Bamberger Decl. ¶ 3 (stating that the plaintiffs' expert was "asked . . . to determine whether it would be possible to measure damages suffered by members of [the] proposed class . . . by the use of a formula common to all class members" (emphasis added)), with Willig Report at 2 (stating that the defendants' expert was "asked . . . to consider whether the plaintiffs' allegations that members of the proposed issuer class have been injured by the alleged price-fixing conspiracy are capable of being proved on a common basis for the purported class members" (emphasis added)). Reasoning that the plaintiffs' and defendants' experts "have been asked . . . meaningfully different questions," the district court accepted the testimony of the defendants' expert, Willig, because only he had "addresse[d] the question before the Court -- which is whether antitrust injury . . . can be proved by evidence common to the class." District Court Opinion, 2006 WL 1026653, at *8, 2006 U.S. Dist. LEXIS 21076, at *27-28. The district court therefore concluded that the antitrust injury element of Cordes and Creditors Trust's lawsuit presents questions individual to each class member.

We disagree. Although the questions asked of the experts differed precisely as described by the district court, we think their answers were directed to the same question: whether injury-in-fact is susceptible to common proof in this case. Neither expert offered any views on the legal question of whether common evidence could prove that the injury allegedly suffered was "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." Brunswick, 429 U.S. at 489.

The defendants' expert, Willig, was of the view

> that any determination of whether a
> particular member of the purported issuer
> class has been injured by the clustering or
> alleged "standardization" of gross spreads
> would require an individualized factual
> analysis about whether, absent such alleged
> standardization, the issuer would have paid a
> gross spread of less than 7% for IPO net
> proceeds, the same or equal to the proceeds
> the issuer actually received as a result of
> its offering.

Willig Report at 2. And the plaintiffs' expert, Bamberger, opined that "the difference between each proposed class member's but-for fee and the actual fee it was charged measures damages." Bamberger Decl. ¶ 24. Each expert thus evaluated whether it would be possible to measure the but-for fee -- that is, the fee an issuer would have paid absent the conspiracy -- by common proof. The plaintiffs' expert thought that the court could use a single formula to establish the supracompetitive prices a plaintiff had paid; the defendants' expert thought no such formula could be constructed.

32

This disagreement goes to a single question -- whether injury-in-fact can be proved by common evidence. Although the plaintiffs' expert would use a single formula while the defendants' expert would conduct many individualized inquiries, both experts would determine injury-in-fact by calculating the but-for fee and comparing it to the fee paid. If the fee paid were higher than the but-for fee, then the plaintiff suffered an injury-in-fact. In this case, the extent of the difference between the but-for fee and the actual fee paid is relevant to the question of damages, but it is from a comparison between the two that the court would be asked to decide the question of injury-in-fact.[11] If the plaintiffs' single formula can be employed to make a valid comparison between the but-for fee and the actual fee paid, then it seems to us that the injury-in-fact question is common to the class. Otherwise, it poses individual ones. The district court did not determine which expert is correct. We leave this question for it to resolve on remand.

Notwithstanding the existing open question as to injury-in-fact, we think that the legal question raised by the antitrust injury element of Cordes's and Creditors Trust's case

---

[11] It is conceivable that one could create a common formula for determining whether the but-for fee was higher or lower than the fee paid, but would need to conduct individualized inquiries to determine the extent of the spread between the two fees. But the experts before us would each use one approach (the plaintiffs' expert a common one and the defendants' expert an individualized one) to answer both the injury-in-fact question -- that is, whether a plaintiff was harmed -- and the damages question -- that is, by how much a plaintiff was harmed.

33

is common to the class. There is only one type of injury alleged in the Complaint -- overcharges paid to a horizontal price-fixing conspiracy. Because each class member allegedly suffered the same type of injury, the legal question of whether such an injury is "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful," Brunswick, 429 U.S. at 489, is a common one.[12]

2. Do Common Questions Predominate? The predominance requirement is met if the plaintiff can "establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof." Visa Check, 280 F.3d at 136 (internal quotation marks and citation omitted; ellipsis in original). It is "a test readily met in certain cases alleging . . . violations of the antitrust

_____

[12] The issue is not only common, but appears to be readily resolved. The defendants were asked at oral argument: "[I]f there is injury, assuming the conspiracy, . . . it is antitrust injury. Isn't that right?" The defendants responded, "It's of the type that's antitrust injury. That's correct, your Honor." Oral Arg. Tr. at 19:16-20 (Mar. 19, 2007). As far as we can tell, the concession was warranted. See New York v. Hendrickson Bros., Inc., 840 F.2d 1065, 1079 (2d Cir. 1988) (recognizing that "[i]n general, the person who has purchased directly from those who have fixed prices at an artificially high level in violation of the antitrust laws is deemed to have suffered . . . antitrust injury"). Of course, not every injury caused by a per se violation of the antitrust laws is antitrust injury and even a plaintiff alleging a per se violation must demonstrate that his injury amounts to antitrust injury. See Atl. Richfield, 495 U.S. at 341 (rejecting "respondent's suggestion that no antitrust injury need be shown where a per se violation is involved"). But the defendants have never contended that overcharges paid to a horizontal price-fixing cartel are not antitrust injuries; nor would any such contention be persuasive in this case.

34

laws." Amchem, 521 U.S. at 625. In deciding whether it is met, the district court must make a "definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues." IPO Securities, 471 F.3d at 41.[13]

As we have explained, the legal question raised by the antitrust injury element here is common to the class. If the factual question -- injury-in-fact -- is also common, then the predominance requirement of Rule 23(b)(3) is likely met.

Even if the district court concludes that the issue of injury-in-fact presents individual questions, however, it does not necessarily follow that they predominate over common ones and that class action treatment is therefore unwarranted. To be sure, the defendants concede that any plaintiff who has suffered the type of injury alleged in the Complaint has suffered antitrust injury. Oral Arg. Tr. at 19:16-20 (Mar. 19, 2007). But "a concession does not eliminate a common issue from the predominance calculus." In re Nassau County Strip Search Cases, 461 F.3d 219, 227 (2d Cir. 2006) ("Nassau County"); see id. at 227-29.

These questions, at least, are common: (1) all factual and legal questions that must be resolved to determine whether the defendants violated Section 1 of the Sherman Act; and (2) all factual and legal questions that must be resolved to decide

---

[13] "[T]he determination as to a Rule 23 requirement is made only for purposes of class certification and is not binding on the trier of facts, even if that trier is the class certification judge." IPO Securities, 471 F.3d at 41.

whether, assuming a plaintiff paid supracompetitive prices, that payment was caused by the defendants' antitrust violation and constitutes the kind of injury with which the antitrust laws are concerned. The question of injury-in-fact, which in this case is equivalent to whether a particular plaintiff would have paid more in the but-for world,[14] may not be common. We do not discount the possibility that the individual questions raised by injury-in-fact might then predominate over the several common questions. Perhaps a trial would focus largely on what particular plaintiffs would have paid in the but-for world. But that is not necessarily so. Under these circumstances, the predominance question, too, is best left to the sound discretion of the district court on remand.

3. Certification as to Particular Issues. Subsequent to the district court's denial of class certification and our grant of the motion to certify this appeal, we issued our opinion in Nassau County. The plaintiffs in that case sought certification of a class of individuals who were subject to the Nassau County Correctional Center's allegedly unconstitutional blanket strip-search policy. Nassau County, 461 F.3d at 222. Recognizing that individual questions concerning damages and defenses might defeat certification of the entire case, the plaintiffs also sought certification as to liability pursuant to Rule 23(c)(4)(A). Id. at 223; see also Fed. R. Civ. P.

---

[14] The related damages question is: if so, how much more.

36

23(c)(4)(A) (providing that "[w]hen appropriate . . . an action may be brought or maintained as a class action with respect to particular issues").  The Fifth Circuit had held that Rule 23(c)(4)(A) certification "as to a specific issue" is available only if common questions predominate in the claim as a whole. Nassau County, 461 F.3d at 226 (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 745 n.21 (5th Cir. 1996)).  We adopted, instead, the Ninth Circuit's view that Rule 23(c)(4)(A) is available to certify particular issues "regardless of whether the claim as a whole satisfies Rule 23(b)(3)'s predominance requirement."  Id. at 227; see Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996) (deciding that "[e]ven if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues").

On remand, if the district court concludes that the action ought not to be certified in its entirety because it does not meet the predominance requirement of Rule 23(b)(3), Cordes and Creditors Trust may seek certification of a class to litigate the first element of their antitrust claim -- the existence of a Sherman Act violation -- pursuant to Rule 23(c)(4)(A) and Nassau County.[15]  We do not, of course, express a view as to whether it

_____

[15] We also leave to the district court to determine whether the issue of damages -- which here may be resolved using the same

37

would lie within the district court's sound discretion to certify such a class under either Rule 23(b)(3) or Rule 23(c)(4)(A).

## CONCLUSION

For the foregoing reasons, the order is vacated and the case remanded to the district court for further proceedings.

---

evidence as that presented for injury-in-fact -- is a common question or requires individual determinations, and whether class certification is appropriate on the question of damages.