**SOUTHWESTERN BELL
TELEPHONE COMPANY, Petitioner,**

v.

**MARKETING ON HOLD INC., d/b/a
Southwest Tariff Analyst,
Respondent.**

No. 05–0748.

Supreme Court of Texas.

Argued March 22, 2007.

Decided Feb. 19, 2010.

Rehearing Denied May 7, 2010.

& Liddell, LLP, Weston C. Loegering, Hughes & Luce, LLP, Christopher D. Kratovil, K & L Gates LLP, Dallas, Cynthia F. Malone, Richard M. Parr, San Antonio, for Petitioner.

John M. O'Quinn, Russell T. Lloyd, Jonathan Scott Stoger, The O'Quinn Law Firm, Thomas Bray, J. Marcus Hill, Hill & Hill, P.C., David W. Holman, The Holman Law Firm, P.C., Houston, Manuel M. Vela, Harlingen, Ernesto Gamez Jr., Brownsville, for Respondent.

Justice WAINWRIGHT delivered the opinion of the Court in which Justice HECHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

In this interlocutory appeal of a trial court's class certification order, the class representative obtained assignments of claims that the defendant telephone company improperly charged some of its business customers certain municipal fees. The court of appeals affirmed the statewide class certification. 170 S.W.3d 814, 829. We conclude that the assignments are valid and provide standing, that the class representative's claims are typical of the other class members' claims, and that common questions of law or fact predominate. However, because the putative class representative failed to establish that it adequately represents the class, we reverse the judgment of the court of appeals and decertify the class.

## I. Factual and Procedural Background

Southwestern Bell Telephone Company (Southwestern Bell) provides telephone service packages to its business customers.[1] To compensate municipalities for

Mike A. Hatchell, Molly H. Hatchell, Locke Lord Bissell & Liddell, LLP, Austin, Christopher Benjamin Dove, Locke Lord Bissell & Liddell, LLP, Houston, Kirsten M. Castaneda, Locke Lord Bissell

1. Southwestern Bell is now a wholly-owned subsidiary of AT & T, Inc. *See* AT & T, Inc. Annual Report Pursuant to Section 13 or

15(d) of the Securities Exchange Act of 1934, for the Fiscal Year Ended December 31, 2008 (Form 10–K), File No. 1–8610, Exhibit 21

maintaining public rights-of-way for telephone services, municipalities assess an annual fee against Southwestern Bell under various "Specified Annual Payment," or "SAP" ordinances. *See, e.g.,* Brownsville, Tex., Ordinance 95–1296, § 12 (July 18, 1995). The ordinances authorize Southwestern Bell to charge its customers a proportionate share of the fee, provided that Southwestern Bell does not profit from the charge. *Id.*

Marketing on Hold, d/b/a Southwestern Tariff Analyst (STA), provides auditing services of business telephone bills and assists its customers in seeking adjustments from telephone companies for improper billing practices. In the course of auditing several Southwestern Bell telephone bills for its customers, STA discovered that Southwestern Bell assessed municipal fees for services STA claims were exempted by the ordinances from 1991 to 1998. STA entered into assignment agreements with five of its customers [2] in consideration of ten dollars per assignment. The assignments further provide that the customer-assignors would receive seventy percent and STA retain thirty percent of any recovery from Southwestern Bell that STA obtains. STA subsequently filed a class suit, as named plaintiff, against Southwestern Bell and sought to be designated the class representative for approximately 6,900 of Southwestern Bell business customers. STA asserted claims for breach of contract, unjust enrichment, breach of express warranty for services, and negligence per se for illegally charging

municipal fees. STA neither subscribed to Southwestern Bell's telephone service packages at issue in the proposed class, nor paid any of the disputed fees at issue.

The trial court conducted a four-day certification hearing and issued a twenty-eight page order certifying the class. The class is defined as:

> All persons and entities or their assignees who made payment(s) to Southwestern Bell Telephone Company for charges which were characterized in Southwestern Bell's bill or statement as a "municipal charge" or "municipal surcharge" or "municipal fee," or similar designation (hereinafter collectively referred to as a "municipal charge"), at a time when the customer's service charge upon which such "municipal charge" was imposed, was provided in a municipality located in the State of Texas having a[n SAP] ordinance....
>
> and all or part of the such so-called "municipal charge" ... was based upon customer service charges made by SWBT for [services included in the SmartTrunk, Digital Loop, and Hotel/Motel subscription packages].[3]

The trial court found that the class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of rule 42(a) of the Texas Rules of Civil Procedure and that questions of law or fact common to the class predominated over individual questions under then-rule 42(b)(4) (now rule 42(b)(3)).

---

(filed Feb. 25, 2009) (describing the principal subsidiaries of AT & T, Inc.).

**2.** The five customers are Russell & Smith Ford, Inc., United Services Automobile Association, Riverway Bank, Petrocon Engineering, and S & B Engineering.

**3.** Each of these terms describe a service provided by Southwestern Bell. The Hotel/Motel

service allows the hotel or motel to incur charges on a per-call basis, thus allowing guests to receive and make local telephone calls charged to the room. Digital Loop and Smart Trunk describe an interface that makes a single connection with the telephone company that then provides the customer with twenty-three channels for telephone communication.

The trial court also found that STA had standing to proceed on behalf of the class and was a proper class representative as the owner of assigned claims.

■ Southwestern Bell appealed the trial court's interlocutory certification order, and the court of appeals affirmed. *See* Tex. Civ. Prac. & Rem.Code § 51.014(a)(3). Southwestern Bell subsequently petitioned this Court, complaining that the court of appeals erred in affirming the class certification order. Specifically, Southwestern Bell challenges: (1) STA's standing and its ability to represent the class adequately; (2) whether STA's claims are typical of the class; and (3) the predominance of common questions where several claims allegedly require individualized proof of reliance and the assessment of damages requires individualized review of customer bills and other records. We granted Southwestern Bell's petition and review the trial court's class certification under an abuse of discretion standard. *Henry Schein, Inc. v. Stromboe,* 102 S.W.3d 675, 691 (Tex.2002).

## II. Standing

■ Southwestern Bell argues that the assignments under which STA claims standing are void as a matter of law and public policy, and, therefore, STA has no standing to sue or ability to serve as the class representative. "[B]efore Rule 42's requirements are considered, a named plaintiff must first satisfy the threshold requirement of individual standing at the

time suit is filed, without regard to the class claims." *M.D. Anderson Cancer Ctr. v. Novak,* 52 S.W.3d 704, 710 (Tex.2001).

■ "The requirement in this State that a plaintiff have standing to assert a claim derives from the Texas Constitution's separation of powers among the departments of government, which denies the judiciary authority to decide issues in the abstract, and from the Open Courts provision, which provides court access only to a 'person for an injury done him.' " *DaimlerChrysler v. Inman,* 252 S.W.3d 299, 304 (Tex.2008) (quoting Tex. Const. art. 1, § 13). We have held that this requirement applies equally to class actions; therefore, the class representative must be a member of the class and have individual standing to sue. *M.D. Anderson,* 52 S.W.3d at 710–11.

Southwestern Bell does not argue that the assignments were invalid due to the absence of the legal precepts necessary to create a binding contractual assignment— meeting of the minds and consideration. *Hathaway v. Gen. Mills, Inc.,* 711 S.W.2d 227, 228 (Tex.1986). Instead, Southwestern Bell claims STA's assignments are contractually invalid as contrary to the SAP ordinances and as against public policy. We address those arguments in turn.

■ The municipal ordinances contain "anti-assignment" clauses that bar the assignment of "any right that accrues from the ordinance," including the claims asserted by STA in this case.[4] *See, e.g.,* Browns-

---

4. The relevant text in the ordinance is as follows:

 SECTION 1—PURPOSE
 Pursuant to the laws of the State of Texas, the CITY Charter and this Ordinance, the TELEPHONE COMPANY has the NON–EXCLUSIVE right and privilege to USE the public RIGHTS–OF–WAY in the CITY for the operation of a telecommunications sys-

tem subject to the restrictions set forth herein ...
SECTION 13—ASSIGNMENT OF ORDINANCE
 This Ordinance and any rights or privileges hereunder shall not be assignable to any other entity without the express consent of the CITY. Such consent shall be evidenced by an ordinance which shall fully recite the

ville, Tex., Ordinance 95–1296, § 13 (July 18, 1995).[5] The clauses preclude Southwestern Bell from assigning to any other entity its "rights or privileges," defined in the ordinance as the "right and privilege to USE the public RIGHTS–OF–WAY." *Id.* §§ 13, 1. The plain language of the anti-assignment clauses preclude assignment of use of the rights-of-way, not assignment of claims for damages for improper charges. Moreover, the anti-assignment clauses bar only Southwestern Bell from assigning, not the customers of STA or of Southwestern Bell. The anti-assignment clauses do not prevent Southwestern Bell's customers from assigning claims for these overcharges.

■ Because STA holds contractually valid assignments, STA steps into the shoes of the claim-holders and is considered under the law to have suffered the same injury as the assignors and have the same ability to pursue the claims. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 572 (Tex.2001); *see also Vt. Agency of Natural Res. v. United States ex rel. Stevens,* 529 U.S. 765, 773, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

■ Southwestern Bell also argues that the assignments should be invalidated on public policy grounds. Southwestern Bell contends that allowing an assignee to purchase the right to serve as the class representative will result in "entrepreneurial class actions," or the commercial marketing of class representation. Because this would undermine the purpose of the class action device, Southwestern Bell argues, the Court should hold that the assignments are void as a matter of public policy. We analyze this issue under our common law of assignability of claims.

■ The assignability of a cause of action is generally freely permitted, but assignments may be invalidated on public policy grounds. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 129 & n. 11 (Tex. 2004) ("As a rule, parties have the right to contract as they see fit as long as their agreement does not violate the law or public policy."); *State Farm Fire & Cas. Co. v. Gandy,* 925 S.W.2d 696, 707–19 (Tex.1996) (listing cases invalidating assignments); RESTATEMENT (SECOND) OF CONTRACTS § 317(2)(b) (1981) ("A contractual right can be assigned unless ... the assignment is forbidden by statute or is otherwise inoperative on grounds of public policy."); *see also Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.,* 502 F.3d 91, 103 (2d Cir.2007) (holding that the assignees are not necessarily antagonistic solely because of their assignee status, which salvages claims that might otherwise be lost by transferring the claims "to someone better able or more willing to pursue the claim or to undertake the risk"). We have invalidated assignments that tend to increase or prolong litigation unnecessarily, tend to distort the litigation process, or are otherwise inconsistent with the purpose of a statutory cause of action. *See PPG Indus. v. JMB/Houston Ctrs. Partners Ltd. P'ship,* 146 S.W.3d 79, 87 n. 31 (Tex.2004) (providing specific examples of types of assignments prohibited under Texas law); *see also id.* at 92 (holding that the assignment of a Texas Deceptive Trade Practices Act claim to a non-consumer was inconsistent with the statutory purpose); *Gandy,* 925 S.W.2d at 710–11 (prohibiting assignment of an alleged sexual abuser's right to recover under his homeowner's policy to the victim because it required the victim to

terms and conditions, if any, upon which such consent is given.

5. The various municipal ordinances involved are not identical; however, the differences do not affect the analysis herein.

collude with her abuser).[6]

STA already had a substantial financial interest in the claims against Southwestern Bell prior to the assignments. *Cf. Mallios v. Baker*, 11 S.W.3d 157, 170 (Tex.2000) (assigning interest in proceeds from legal malpractice claim to disinterested third party). Prior to the dispute in this case, STA had represented customers of Southwestern Bell for years in an attempt to recover alleged overcharges on their phone bills. STA and the five customer-assignors were bound by consulting contracts in which STA agreed to audit the customers' telephone bill in exchange for "fifty percent (50%) of all recovered overcharges, whether recovered through refunds or credits." STA purchased assignments of claims in this case after it convinced the trial court in another class

suit that a proposed class settlement would vanquish claims against Southwestern Bell that had not been adjudicated.[7] The trial court excluded the claims at issue in this case from the settlement. By these assignments, STA purchased the customer-assignors' full "right or interest in the Claims" in this case in exchange for "a reduction of the pre-existing consulting fee percentage" from fifty to thirty percent.[8] Although the assignments also conveyed the "sole authority for decisions with regards to prosecuting or settling the Claims," the assignments did not convey class representation status, as Southwestern Bell contends. Because STA had a pre-existing relationship with the assignors that was directly related to the subject of the claims, STA does not appear to be a "stranger/entrepreneur" whose actions disrupt the class suit vehicle and

6. *See also Elbaor v. Smith*, 845 S.W.2d 240, 247–48 (Tex.1992) (prohibiting Mary Carter agreements because the settling defendant was incentivized to collude with the plaintiff against the remaining defendants); *Int'l Proteins Corp. v. Ralston–Purina Co.*, 744 S.W.2d 932, 934 (Tex.1988) (prohibiting assignment of the plaintiff's cause of action against one tortfeasor to another joint tortfeasor who had contributed to the plaintiff's injury); *Trevino v. Turcotte*, 564 S.W.2d 682, 690 (Tex.1978) (prohibiting assignment of the right to challenge a will to those who had taken under the will); *Zuniga v. Groce, Locke & Hebdon*, 878 S.W.2d 313, 317 (Tex.App.-San Antonio 1994, writ ref'd) (prohibiting assignment of legal malpractice claims because it "would cause a reversal of the positions taken by each set of lawyers and clients").

7. STA and another consulting company hold assignments of claims in a related class action settlement brought in the 357th District Court of Cameron County, Texas. The claims in this case were carved out of another class action brought by Jose Mireles and Patricia Genuchi against Southwestern Bell for improper municipal fees paid by approximately five million Southwestern Bell business *and* residential customers in Texas. After a settlement (the *Mireles* settlement) was reached,

STA intervened at the fairness hearing. STA dropped its objection once an agreement was reached that narrowed the scope of the *Mireles* settlement release apparently to exclude the claims of Southwestern Bell's business customers who paid municipal fees pursuant to the three types of telephone service packages at issue in this case.

8. Specifically, the assignments convey the customer's "rights, remedies, interests, benefits, choses in action, defenses, claims, demands, lawsuits, debts, liens, collateral, damages, covenants, agreements, actions, cross-actions, counterclaims, third-party claims, and causes of action of any nature, against [Southwestern Bell]." The claims are based on "'municipal charges' ... [that] were not authorized or imposed by the municipal ordinance or municipal franchise agreement relating to [Southwestern Bell's] use of public right-of-ways." STA agrees to pay the customer-assignors "70 percent of the net proceeds from any recovery on the Claims as part of the consideration for assigning to STA its remaining interest in the Claims." "Net proceeds from any recovery on the Claims" is defined as "any recovery (in good funds) received on the Claims less STA's costs of court, expenses, attorneys' fees, and any offsets, incurred in pursuing recovery on the Claims."

distort the judicial process. *Cf. id.* at 170 (Hecht, J., concurring) ("[A]n assignment of an interest in a legal malpractice claim is contrary to public policy if the assignee takes the interest *purely as an investment unrelated to any other transaction* and acquires not merely a financial interest in the outcome but a significant right of control over the prosecution of the claim.") (emphasis added).

■ Southwestern Bell argues that STA's representation distorts the litigation process and flouts the legitimate goals of the class action device because STA has suffered no common class injury and is using the class device as a covert means to generate a finder's fee for itself, rather than to compensate for an out-of-pocket loss. However, the valid assignment of claims to a party is not invalidated by the party's designation as the representative in a class suit. Nothing unique to the class action context or to this case dictates that we take the extraordinary step of invalidating otherwise contractually valid assignments on the asserted public policy grounds. *See Citizens Ins. Co. of Am. v. Daccach,* 217 S.W.3d 430, 450 (Tex.2007) (citing *Sw. Ref. Co. v. Bernal,* 22 S.W.3d 425, 432 (Tex.2000) ("[O]ur procedural rules do not permit the form of the proceeding to determine whether substantive legal principles will control.")); Rules Enabling Act, 28 U.S.C. § 2072(b) (stating that the Federal Rules of Civil Procedure shall not "abridge, enlarge or modify" preexisting rights). But these issues go to STA's adequacy as the class representative, a matter we take up below, not the validity of the assignments it holds. The court in *Cordes* recognized this distinction, noting that the validity of the assignments in that case was "hardly the end of the matter," and that other certification requirements, including adequacy, remained

to be considered. *Cordes,* 502 F.3d at 103–04.

■ Certainly, class actions are not intended to serve as vehicles for commercial investment in desired large recoveries or as avenues for entrepreneurial business development. To the extent those concerns exist in a class suit, the courts of this state must scrutinize the circumstances on a case-by-case basis to determine if the arrangement undermines the tenets and purpose of the class action vehicle or otherwise violates public policy. *See Mallios,* 11 S.W.3d at 170 (Hecht, J., concurring) ("Only a person who takes so great a stake in a claim that he in essence owns it, or who, in effect, invests in a claim, obtaining at the same time significant rights to protect the investment, raises the problems involved in commercially marketing claims."); *PPG Indus.,* 146 S.W.3d at 87; *Gandy,* 925 S.W.2d at 707.

STA is a member of the class that the trial court certified. The certification order states that "[a]ll persons and entities or their assignees who made payment(s) to Southwestern Bell Telephone Company" for municipal charges are members of the class. In other words, STA is a valid class member—a point acknowledged by Southwestern Bell at oral argument when its counsel stated that "an assignee can pursue these claims and could even be a class member."

■ If we were to hold, as Southwestern Bell contends we should, that STA's assignments are void on public policy grounds, we would abrogate STA's individual standing to bring its claims as either a member of the putative class as defined by the trial court or in an individual lawsuit. STA's individual standing does not change based on whether it asserts that standing as a class member, in support of its bid to serve as the class representative, or as an individual litigant. The standing require-

ments remain the same because each class member and the class representative is an individual claimant seeking a personal recovery. *M.D. Anderson*, 52 S.W.3d at 710.

 Southwestern Bell's remaining arguments on standing concern STA's designation as class representative. However, whether the named plaintiff is a proper class representative is not part of the standing inquiry. *M.D. Anderson*, 52 S.W.3d at 710. Assignee-class representation undoubtedly raises concerns about the potential for misappropriation of the class action device, and, as discussed above, the potential for abuse implicates public policy concerns. However, to evaluate class representatives whose representation may either threaten or further the proper use of class actions and the rights of absent class members, we employ well-established legal mechanisms-the adequacy, predominance, and typicality requirements.

Accordingly, we decline to invalidate the assignments on public policy grounds. Having concluded that STA has standing, we turn to the merits of Southwestern Bell's petition—whether STA and the proposed class satisfy the requirements in Texas Rule of Civil Procedure 42.

## III. Rule 42

 All class actions must satisfy four requirements:

(1) numerosity—the class is so numerous that joinder of all members is impracticable; (2) commonality—there are questions of law or fact common to the class; (3) typicality—the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) adequacy of representation—the representative parties will fairly and adequately protect the interests of the class.

*Daccach*, 217 S.W.3d at 438 (citing Tex.R. Civ. P. 42(a)); *Bernal*, 22 S.W.3d at 433. These protections are not only procedural safeguards but are based in the Due Process clauses of the United States and Texas Constitutions to ensure that plaintiffs, whose interests are represented by another, have notice and an opportunity to be heard in the proceedings and that the class representative adequately represents their interests. *Daccach*, 217 S.W.3d at 455–58 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43, 45, 61 S.Ct. 115, 85 L.Ed. 22 (1940)). Southwestern Bell claims that STA fails rule 42's typicality and adequacy requirements, but does not challenge numerosity or commonality.

A class action must also satisfy at least one of the requirements in rule 42(b). Here, STA claims the class action satisfies rule 42(b)(3), which requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that class treatment is "superior to other available methods for the fair and efficient adjudication of the controversy." *Daccach*, 217 S.W.3d at 438–39 (citing Tex.R. Civ. P. 42(b)(3)). "Rule 42 contains a list of non-exhaustive factors to aid a court in determining if (b)(3) certification is appropriate: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." *Id.* at 439 (citing Tex.R. Civ. P. 42(b)(3)).

### A. Typicality

 For a proper class certification, rule 42 requires that "the claims or

defenses of the representative parties are typical of the claims or defenses of the class." TEX.R. CIV. P. 42(a)(3). "A claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir.2007) (internal quotations omitted) (interpreting FED.R.CIV.P. 23). Southwestern Bell argues that STA's claims are atypical because STA never paid the disputed charges and, therefore, was never a member of the class and never suffered a class injury. Southwestern Bell also argues that STA has destroyed typicality by burdening the class with questions regarding its status as an assignee and the validity of its assignments.

We have not previously had an opportunity to address the typicality of an assignee-class representative's claims. Other courts considering this issue have focused on the legal theories behind the claims asserted, not the characteristics of the assignee, unless a defense unique to the assignee will "skew the focus of the litigation and create a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 304–05 (E.D.Mich.2001) (internal quotation marks and citations omitted); *see also Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir.1986); *Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164–65 (7th Cir.1974).

▇▇▇ Emphasizing STA's individual characteristics and its status as an assignee, Southwestern Bell downplays the literal language of rule 42(a) which focuses on the *"claims or defenses"* of the class representative. TEX.R. CIV. P. 42(a)(3) (emphasis added). By virtue of its valid assignments, STA seeks a refund of the overcharges based on the same legal theories and conduct as the class; therefore, STA's *claims* are typical of the class. Further, an assignee under Texas common law stands in the shoes of his assignor. *Jackson v. Thweatt*, 883 S.W.2d 171, 174 (Tex.1994) (citing *FDIC v. Bledsoe*, 989 F.2d 805, 810 (5th Cir.1993)). Because STA is the assignee of the customer-assignors, STA steps into the customers' shoes and may assert a claim for the injury shared by the assignor and all members of the class. By definition, STA's claims against Southwestern Bell are the same as the class members. Additionally, because the Court has resolved the validity of STA's assignments both as a matter of law and public policy, it will not be an issue at trial. Therefore, Southwestern Bell's argument that this issue will skew the focus of the litigation is unavailing. *See In re Cardizem*, 200 F.R.D. at 304–05. We therefore conclude that STA has satisfied the typicality requirement.

## B. Predominance

▇▇▇ Predominance guards against certifying class actions that could overwhelm or confuse a jury or compromise a party's defense. *Schein*, 102 S.W.3d at 690; *Bernal*, 22 S.W.3d at 434. Accordingly, "[c]ertification is not appropriate unless it is determinable from the outset that the individual issues can be considered in a manageable, time-efficient and fair manner." *Stonebridge Life Ins. Co. v. Pitts*, 236 S.W.3d 201, 205 (Tex.2007) (citing *Schein*, 102 S.W.3d at 688; *Bernal*, 22 S.W.3d at 435). Predominance requires that common questions of law or fact will predominate over questions affecting only individual members. *Schein*, 102 S.W.3d at 694; *Bernal*, 22 S.W.3d at 433. "The test for predominance is not whether common issues outnumber uncommon issues but ... whether common or individual is-

sues will be the object of most of the efforts of the litigants and the court." *Bernal,* 22 S.W.3d at 434 (internal quotations omitted); *see also Stonebridge,* 236 S.W.3d at 205.

Southwestern Bell argues individualized proof of reliance and review of customer bills and other records to assess damages precludes a finding of predominance. We disagree.

### 1. Liability

■ Southwestern Bell argues that reliance is an element of the class claims for breach of express warranty and unjust enrichment, and thus individualized proof of *each* customer's reliance on the bills in question will be the focus of the litigation.

STA responds that a showing of particularized reliance is not required to establish breach of express warranty or unjust enrichment, but even if it is, class-wide proof of reliance is available in this case because Southwestern Bell employs a standard format in its telephone bills, including a line item for municipal fees. STA cites the allegations in the class petition that "[a] Class member cannot independently verify, or independently determine, the customer service charges on which the 'municipal charge' is being applied and the rate applied to such customer service charges." STA argues that class members were subjected to a uniform misrepresentation in the bills—that the amount of the municipal fee was legally authorized—and that, by paying their bills, class members relied on that misrepresentation. Whether Southwestern Bell was authorized to charge municipal fees on the services in question and whether class members relied on that representation, STA contends, are thus susceptible to class-wide proof. *See Klay v. Humana, Inc.,* 382 F.3d 1241, 1258–59 (11th Cir.2004), *cert. denied,* 543 U.S. 1081, 125 S.Ct. 877, 160 L.Ed.2d 825 (2005) (rea-

soning that where the defendant's alleged misconduct is standardized, circumstantial evidence can be used to show class-wide reliance). STA also argues that the potential individualized inquiries identified by Southwestern Bell are hypothetical and speculative. We agree.

Texas courts have been reluctant to certify a class when proof of reliance is required as an element of a claim. *See Schein,* 102 S.W.3d at 694 (declining to certify a class when five of the plaintiffs' claims—fraud, breach of express warranty, negligent misrepresentation, promissory estoppel, and DTPA laundry list violations—required proof of reliance) (citing *Perrone v. GMAC.,* 232 F.3d 433, 440 (5th Cir.2000)); *Fid. & Guar. Life Ins. Co. v. Pina,* 165 S.W.3d 416, 423 (Tex.App.-Corpus Christi 2005, no pet.) (DTPA); *GMC v. Garza,* 179 S.W.3d 76, 82 (Tex.App.-San Antonio 2005, no pet.) (breach of express warranty). Breach of express warranty requires proof of some form of reliance. *See Schein,* 102 S.W.3d at 686 (citing *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997)) (stating that "reliance is also not only relevant to, but an element of proof of, plaintiffs' claims of breach of express warranty"); *PPG,* 146 S.W.3d at 99. Whether proof of reliance is required for unjust enrichment depends on the nature of the allegations. *Heldenfels Bros., Inc. v. Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992) ("A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.").

■ Assuming STA alleges a fraud-based theory of unjust enrichment, the determinative inquiry under both unjust enrichment and breach of express warranty is whether individual inquiries regarding reliance predominate. When we have concluded that individual inquiries would

predominate, we have consistently relied on evidence of individual variation. In *Stonebridge,* for example, consumers alleged that they were subject to a uniform and misleading telemarketing scheme to sell insurance under a "money had and received" theory. *Stonebridge,* 236 S.W.3d at 204. The class claimed they were never informed that their credit cards or bank accounts would be charged for premiums without any further contact with them when the trial period ended. *Id.* We held that the defendant was entitled to inquire whether individual class members understood they would be charged without further notice, consented to the charges after they were made, or wanted the coverage irrespective of how premiums were charged. *Id.* at 206–07. In so holding, we pointed to evidence that some customers understood they were being charged for premiums by the defendant and wanted the insurance. *Id.* at 206. Because the class representatives failed to prove that these individual inquiries could be managed fairly and efficiently, we held that the predominance requirement was not satisfied. *Id.* at 206–07; *see also Schein,* 102 S.W.3d at 694 (holding that class-wide proof of reliance was not supported by the record because there was evidence purchasers relied on recommendations from colleagues and others rather than any by the defendant).

When evidence existed that individual class members' experiences reasonably could have varied, we have likewise refused to certify the class. We held in *Best Buy Co. v. Barrera* that the class claim to recover a restocking fee, based on the equitable "money had and received" theory, turned on individual issues that would predominate at trial. 248 S.W.3d 160, 163 (Tex.2007). The class representative was given a receipt which contained a statement notifying her that "[a] 15% restocking fee will be charged on returns or ex-

changes of any opened [merchandise]." *Id.* at 161–62. This same notice was posted in the store. *Id.* at 162. Although the class claim involved common issues, such as whether the restocking fee was uniformly calculated and applied when customers returned items, we held that the defendant was entitled to inquire whether individual class members were aware of the restocking fee and voluntarily agreed to it as they made purchases. *Id.* at 163; *see also Snyder v. Magaña,* 142 S.W.3d 295, 301–02 (Tex.2004) (holding that, when the defendant offered its written policy setting forth several reasons why an employee's commission could be rejected, whether an employer improperly denied promised commissions was an individual issue that would predominate at trial).

Conversely, in this case, Southwestern Bell employs a standard format in its telephone bills, including a line item for municipal fees. The municipal charge is uniformly calculated and applied. After rigorous analysis, the trial court found that the alleged misrepresentation on each bill—an amount due and owing for a municipal charge—"is uniform to all members of the class. . . ." The trial court also found that "evidence of reliance can be demonstrated from the records of [Southwestern Bell] by showing that the members of the putative class paid the bill after it was presented." Again, we review the certification under an abuse of discretion standard. *Schein,* 102 S.W.3d at 691.

■ The class has met its burden of establishing class-wide proof of reliance because the plaintiffs had no choice but to rely on the misrepresentation. In paying the amount of the bill, Southwestern Bell's customers must have paid the total amount due, including the municipal fee. If they had paid a different amount, such as one

that did not include the amount of the fee, Southwestern Bell certainly would have taken action, such as cancelling services. *See, e.g., Poulos v. Caesars World, Inc.,* 379 F.3d 654, 667–68 (9th Cir.2004) (recognizing that reliance can be shown where it provides the "common sense" or "logical explanation" for the behavior of plaintiffs and the members of the class, in which case reliance could be established class-wide); *Garner v. Healy,* 184 F.R.D. 598, 603–04 (N.D.Ill.1999) (holding that reliance could be resolved on a class-wide basis because the alleged fraud was perpetrated in a uniform manner when a company sold "car wax," which in fact contained no wax). To defeat certification requires more than mere allegations that individual issues will predominate.

 Southwestern Bell's argument that some of its customers *may* have called customer service to obtain an adjustment, failed to pay the bill entirely, or otherwise acted inconsistently with a showing of reliance is mere hypothesis and does not defeat class-wide proof of reliance. Class-wide proof of reliance is possible when class-wide evidence of reliance exists. *Schein,* 102 S.W.3d at 694. In this case, class-wide evidence exists in the form of customer bills upon which customers must have relied to determine the initial amount due and owing. Although some of the customers' reactions to the bills may have differed, reliance was consistent throughout the class.

This case is different from, for example, *Fidelity & Guaranty Life Insurance Co. v. Pina,* in which the plaintiffs sued alleging a misrepresentation that the high interest rate on an annuity would continue past the first year, when in fact it did not. 165 S.W.3d 416, 419 (Tex.App.-Corpus Christi 2005, no pet.). In that case, the plaintiffs alleged that they had relied on the statement in the annuity agreement as to the interest rate; however, the testimony of the plaintiffs varied as to whether they would have purchased the annuity had they known that the high interest rate would not continue past the first year. *Id.* at 424. In contrast, in this case, the customers had already used the services and were required to pay the amount due on the bill. Whereas many factors may have influenced the plaintiffs' decisions in *Pina,* the customers in this case had no decision to make. They were required to pay the amount due and owing on the bill to continue telephone service.

Accordingly, we hold that the trial court did not abuse its discretion in finding that individual issues of liability for the breach of warranty and unjust enrichment claims will not predominate over common issues at trial. *Schein,* 102 S.W.3d at 694; *Bernal,* 22 S.W.3d at 438.

## 2. Damages

 Even though the class claims are susceptible to class-wide proof of reliance and thus liability, it will still be necessary to determine the refund or credit owed to each customer. Although individualized damage calculations do not necessarily defeat predominance, where the focus of the litigation will involve individually assessing the amount of the refund and determining who is entitled to any such refund, a finding of predominance of class issues is precluded. *Schein,* 102 S.W.3d at 694–95. The trial court found that a computer program could be constructed to review the bills and payments and perform the requisite mathematical calculations to determine the damages owed to each class member. The court of appeals affirmed the trial court's finding. 170 S.W.3d at 828–29. We review the trial court's decision under an abuse of discretion standard. *Schein,* 102 S.W.3d at 690–91; *Bernal,* 22 S.W.3d at 435, 439.

The use of a computer program and database to calculate class-wide damages in appropriate cases has been approved by several courts. *See, e.g., Klay,* 382 F.3d at 1260; *Gunnells v. Healthplan Svcs., Inc.,* 348 F.3d 417, 429 (4th Cir.2003); *Smilow v. Sw. Bell Mobile Sys., Inc.,* 323 F.3d 32, 40–41 (1st Cir.2003); *Roper v. Consurve, Inc.,* 578 F.2d 1106, 1112 (5th Cir.1978). Southwestern Bell makes several challenges to the proposed computer program and damage model. Southwestern Bell first argues that an accurate calculation of damages for each individual class member cannot be made in a timely and efficient manner. There was conflicting expert testimony on this issue. Southwestern Bell's expert testified that the construction of a computerized database would cost approximately $2.3 million and take almost three years to complete. Conversely, STA's expert testified that historical customer records maintained in Southwestern Bell's computer database and optical microfiche records can be efficiently and economically retrieved. He testified that it would take approximately 600 hours and cost $50,000 to calculate damages. Based on that assessment, STA argues that the damages calculation would not predominate over other class-wide issues at trial.

Southwestern Bell also argues that the proposed computer program fails to address critical problems of calculating damages, including missing data, the possibility that "reallocated" municipal charges will increase or decrease individual damage awards, billing adjustments, changes in area code or municipality, and changed or discontinued services. Again, STA's expert refuted each of Southwestern Bell's expert's claims regarding the difficulty in calculating damages.

The testimony at the certification hearing shows that STA's expert had experience in evaluating allegations of over-billing and calculating refunds, while Southwestern Bell's expert did not. Having reviewed their testimony and giving due deference to the trial court's decision, we conclude the trial court did not abuse its discretion in giving STA's expert's testimony more weight in the face of conflicting evidence. *See Schein,* 102 S.W.3d at 691 ("A trial court has discretion to rule on class certification issues, and some of its determinations—like those based on its assessment of the credibility of witnesses, for example—must be given the benefit of the doubt.").

Finally, Southwestern Bell argues that the computer program cannot accurately assign damages to particular class members in a timely and efficient manner. Southwestern Bell's records are identified by telephone number, not customer name. The records do not reflect changes in ownership, whether charges were subdivided, or whether someone else paid the bill on the customer's behalf. Because the class is defined as those customers who made *payments* to Southwestern Bell, Southwestern Bell contends that each class member must be investigated to determine if she actually paid each of the bills at issue for the 96–month period.

The class definition—customers who made payments to Southwestern Bell—is materially indistinguishable from the customer responsible for payment. The statute makes clear that a customer, defined as the person "responsible for the payment of charges," shall receive a refund in the case of overbilling. 16 Tex. Admin. Code § 26.27(a)(3)(B). Whether the telephone charges were ultimately subdivided by the customer and passed on to its tenants, guests, or employees is irrelevant—the bill was submitted to the customer, and the customer was responsible for its payments. In addition, proof of ownership and payment may be efficiently determined

through proof-of-claim forms or some other vehicle. *Schein,* 102 S.W.3d at 690. We therefore conclude that the trial court did not abuse its discretion in finding that proof of damages can be managed in a timely, efficient, and fair manner. *Bernal,* 22 S.W.3d at 436.

With respect to notice, the trial court stated that because "the records of [Southwestern Bell] may not be sufficient to identify who may have owned some billing telephone numbers ... notice to some putative class members will be more difficult to accomplish than others." The trial court also stated that it would "inquire into additional technical means of identifying and notifying unidentified class members, such as a search of the records of the Secretary of State's Office, both during the initial notice phase of the lawsuit and during damage distribution, if any." Evidence at the certification hearing establishes that at least twenty-five percent of the class members are current Southwestern Bell customers, and Southwestern Bell produced a list of putative class members, identifying approximately 2,200, or thirty percent, of the putative class members by name. Therefore, the trial court did not abuse its discretion in concluding that the individual class members will not be too difficult to identify.

Because we conclude that neither individual liability nor damage issues will consume the focus of the litigation, we hold that the trial court did not abuse its discretion in finding that the class meets the predominance requirement. *Schein,* 102 S.W.3d at 694; *Bernal,* 22 S.W.3d at 438.

## C. Adequacy

In addition to proving that the putative class representative holds typical claims, and that the class claims predominate in the class, the putative class representative must prove that it will adequately represent the class. An assignee's interests are not "necessarily antagonistic" solely because it is an assignee, but the perils of permitting an assignee to represent the class raise important concerns under rule 42. *Cordes,* 502 F.3d at 102. We believe courts should scrutinize carefully the motivating interests and incentives of parties that agree at an apparent financial loss to obtain the right to serve as the class representative.[9] Rule 42's adequacy requirement raises these considerations, which include but are not limited to: (1) the assignee's connection to the classwide injury; (2) the benefits the assignee receives under the assignments; and (3) the assignee's motivation in asserting claims on behalf of the assignor(s). These considerations, in addition to other concerns that may be raised by the facts of each case, aim to ensure that the assignee's interests are aligned with the interests of the unnamed class members.

With these considerations in mind, we now turn to Southwestern Bell's claim that STA cannot adequately represent the class. We agree that STA's interests conflict with those of the absent class members. STA is not an injured claimant seeking relief to make itself whole, but voluntarily assumed the classwide injury in order to serve as the class representative. Unlike the class, STA has a materially lesser interest in making itself and the class whole because it was never personally aggrieved by Southwestern Bell's alleged overcharging, and its maximum recovery is less than half the value of any

---

9. In this case, STA stood to gain fifty percent of any refund or credit it obtained on behalf of its five clients prior to the assignment pursuant to its preexisting auditing contracts. Under the assignments, STA stands to gain only thirty percent.

individual claim for damages. *Cf. In re Cardizem,* 200 F.R.D. at 304–05 (holding that an assignee-class representative was adequate where it obtained an assignment from its wholesaler and a direct purchaser of the drug at issue in order to sue a drug manufacturer for its allegedly unlawful delay of a generic version into the market). For example, because STA never paid the alleged overcharges at issue and can retain at best only thirty-percent of any recovery, STA's incentive in settling quickly in order to minimize litigation expenses differs from class members who have overpaid and may be willing to hold out for a settlement that approximates their actual damages.[10] For the same reason, STA's motivation may encourage pursuit of theories of relief that are more efficient for it, but yield less recovery for absentee class members.

The undisputed evidence also shows that STA solicited these assignments from its customers to become the class representative. Prior to the dispute in this case, STA and the five customer-assignors were bound by consulting contracts in which STA agreed to audit the customer's telephone bill in exchange for "fifty percent (50%) of all recovered overcharges, in the form of either refunds or credits." After discovering the alleged overcharges, STA solicited assignments of five customers' "right or interest in the Claims" in this case and the "sole authority for decisions with regards to prosecuting or settling the Claims" in exchange for, to use STA's characterization, "a reduction of the pre-existing consulting fee percentage" from

fifty to thirty percent. STA already had a substantial financial interest in the claims against Southwestern Bell prior to the assignments. The only objective benefit that STA obtained was standing to sue on behalf of the five assigned claimants, and the resultant ability to serve as the class representative and to control the litigation of some 6,900 claims against Southwestern Bell. STA stands in somewhat different shoes from other class members by virtue of its possible recovery pursuant to consulting contracts with other customers who paid the alleged overcharges but have not assigned their claims to STA. STA's motives, different interests, and potentially conflicting interest created by the benefits under the five assignments and consulting contracts distinguish it from the thousands of other class members.[11]

█ While the sacrificial servant role exists in many segments of our society, it is not often found in class action litigation. Class representation vests a great deal of power in the class representative. *Bowden v. Phillips Petroleum Co.,* 247 S.W.3d 690, 697 (Tex.2008). The class representative decides, among other matters, which claims to pursue and which claims to forgo, and the remedies and strategies to pursue in supervising class counsel. *Id.; Daccach,* 217 S.W.3d at 447–48. In this case, class representation not only affords STA the ability to control the outcome for its five assigned claims, but also the claims of the entire class.

10. STA was a Southwestern Bell customer and a member of a prior class action against Southwestern Bell for alleged overcharging, but it is undisputed that STA did not personally pay the fees ascribed to the telephone services at issue in this case.

11. Linda S. Mullenix, professor at the University of Texas School of Law and prolific au-

thor on federal and state class actions, testified at the certification hearing that she "had never seen anything like this before...." She opined that the multitude of different incentives of STA presents a scenario in which "class counsel will be either litigating, negotiating, or bargaining the rights of one group [of class members] against another."

STA's lack of any claim of its own makes it unique among the members of the class. Its only knowledge of the claims it holds must be obtained from its assignors. The individuals identified in the record as acting for STA with respect to the class were the president of Marketing on Hold and an STA employee with limited corporate authority. Both indicated that they would rely heavily on STA's counsel to conduct the litigation. While we recognize that class counsel's control over class litigation is often greater than it is in non-class litigation, the class action rule contemplates that the class representative is "not simply lending [its] name [ ] to a suit controlled entirely by the class attorney." 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1766 (3d ed.2005). In this case, STA's interest in the litigation by assignment removes it and its counsel one step further from the class members, enhancing the risk of conflicts.

In this case, STA has failed to adequately show that in pursuing its claims, STA will advance the interests of the class. *Schein*, 102 S.W.3d at 691–92 (holding the proponent of certification bears the burden of proof on certification issues). We therefore hold that STA has not established that it can adequately represent the class.[12]

## IV. Conclusion

 It is well-settled that a valid assignee of a claim has standing to be a member of a class action related to that claim. The assignee is not disqualified from serving as a class representative so long as it is not a stranger seeking entrepreneurship in class actions, and it does not distort the litigation process. In this instance, STA, the assignee, had an existing business relationship with class members, is a class member itself and obtained valid assignments from class members. As with any class representative, STA also must satisfy the requirements of Rule 42 of the Texas Rules of Civil Procedure. Although STA satisfied the typicality and predominance requirements to be a class representative (numerosity and commonality were not challenged), it failed to establish that it is an adequate class representative. Accordingly, we reverse the judgment of the court of appeals, decertify the class, and remand to the trial court for further proceedings consistent with this opinion.

Justice O'NEILL filed dissenting opinion in which Chief Justice JEFFERSON and Justice MEDINA joined.

Justice GUZMAN did not participate in the decision.

Justice O'NEILL, joined by Chief Justice JEFFERSON and Justice MEDINA, dissenting.

The Court concludes that Marketing on Hold, doing business as Southwest Tariff Analyst (STA), holds valid assignments of claims typical of the class, has standing to assert its claims as a class member, is neither a stranger to the litigation nor a class-action entrepreneur, and will not disrupt the class-suit vehicle or distort the

---

12. Southwestern Bell also argues that STA's interests directly conflict with the class, due to STA's preference for cash remedies, its lack of an assignment from a Hotel/Motel subscriber, and the possibility that some customers' damages may be reduced or eliminated by reallocation of municipal fees, and challenges whether STA will zealously represent the class and supervise class counsel. Because we have concluded that STA is not an adequate representative on other grounds, we need not reach Southwestern Bell's additional arguments.

judicial process. Yet the Court decides STA is not an adequate class representative based on the potential for hypothetical conflicts that have no basis in the record. The Court states that it is not deciding whether an assignee can ever be an adequate class representative, but if STA doesn't qualify it is hard to imagine who would. The assignors were established STA business customers who relied on STA's superior knowledge about Southwestern Bell's billing procedures, information retrieval systems, and the tariffs that govern this highly regulated industry, and no antagonism or conflict exists that would affect STA's adequacy to represent the class. In my view, STA's unique expertise gives it an ability superior to that of any other class member to pursue this litigation as class representative and supervise the activities of class counsel, as the trial court found. Because the Court concludes otherwise, I respectfully dissent.

Southwestern Bell is assessed fees under various municipal ordinances in order to compensate the cities enacting them for administering public rights-of-way. The company is allowed to pass the fees through to its telephone subscribers, but it is prohibited from making a profit from the charge. *See, e.g.,* Brownsville, Tex., Ordinance 95–1296, § 12 (July 18, 1995). STA provides auditing services of business telephone bills and assists its customers in seeking refunds from telephone companies for improper billing practices, in exchange for a percentage of the amount its customers recover. In the course of auditing

Southwestern Bell bills for its customers, STA discovered that the company had improperly passed through municipal charges for certain services relating to Smart-Trunk, Digital Loop and Hotel/Motel services. Each of these trademarks describe a service provided by Southwestern Bell to its business customers.[1]

STA had a number of customers who subscribed to some of these Southwestern Bell services.[2] STA and those customers were class members in another class action, *Mireles v. Southwestern Bell Telephone Company,* in the 357th District Court of Cameron County, which included most of Southwestern Bell's residential and business customers in Texas. When a pending *cy pres* settlement in *Mireles* threatened to release the claims of its business customers and others similarly situated with no compensation, STA informed its customers, who decided to assign their claims to STA. STA then carved those claims out of the class settlement, preserving Southwestern Bell's business customers' claims relating to SmartTrunk, Digital Loop and Hotel–Motel municipal charges, which are the subject of this class-action suit.

After a four-day certification hearing the trial court determined that the class satisfied the numerosity, commonality, typicality, and adequacy of representation requirements of Rule 42(a) of the Texas Rules of Civil Procedure, and that questions of law and fact common to the class predominated over individual questions under Rule 42(b)(4). Tex.R. Civ. P. 42(b)(4)

---

1. The Hotel/Motel service allows the hotel or motel to incur charges on a per-call basis, thus allowing guests to receive and make local telephone calls charged to the room. Digital Loop and Smart Trunk describe an interface that makes a single connection with the telephone company that then provides the customer with twenty-three channels for telephone communication.

2. The customers are United Services Automobile Association (USAA), S & B Engineers, Inc./S & B Engineers and Constructors, Ltd., Petrocon Engineering, Inc., Riverway Bank, and Russell & Smith Ford, Inc.

(now Rule 42(b)(3)). The trial court also held that STA had standing to proceed on behalf of the class and is a proper class representative as the owner of its customers' assigned claims. According to the trial court's findings, there was nothing improper about the methods by which STA acquired the assignments, STA has been in the business of auditing Southwestern Bell's and other utilities' bills for years, STA has knowledge and expertise about Southwestern Bell's billing procedures and information retrieval systems which are not common knowledge or widely known to putative class members, and STA's knowledge and expertise give it a superior ability to pursue this litigation and supervise the activities of class counsel. The trial court also found that STA's interests are aligned with, and not antagonistic to, the putative class members. The court of appeals affirmed the trial court's certification order. 170 S.W.3d 814, 825. It rejected Southwestern Bell's portent of the order opening the floodgates to entrepreneurial abuse in light of the trial court's findings that STA's assignments came from pre-existing customers, those customers had been members of the *Mireles* class action from which this suit derived, and STA did not improperly solicit the assignments. *Id.* at 825. The court of appeals, too, rejected Southwestern Bell's claims that STA's interests conflict with or are antagonistic to other class members. *Id.* at 826–27. The Court today, however, concludes that STA's interests conflict with those of the putative class such that it cannot be an adequate class representative. The potential conflicts the Court hypothesizes, however, are more imagined than real, and in any event are insufficiently compelling to disqualify STA from representing the class.

According to the Court, STA must have a lesser interest in making itself and the class whole because it was "never personally aggrieved by Southwestern Bell's alleged overcharging and its maximum recovery is less than half the value of any individual claim for damages."[3] But neither of these circumstances creates a conflict. By the assignments, which the Court acknowledges are entirely valid, STA stands in the shoes of its customers, whose claims arise from the same overbillings that give rise to the other class members' claims. Nor does STA's smaller financial interest in the litigation affect its ability to adequately represent the class. As other courts have noted, the amount of a plaintiff's financial interest in the suit is not determinative of its ability to represent the class adequately. *See, e.g., In re Cardizem*, 200 F.R.D. 297, 306 (E.D.Mich.2001); *In re S. Cent. States Bakery Prods.*, 86 F.R.D. 407, 418 (M.D.La.1980). The Court theorizes that since STA never paid the overcharges itself, it might have a greater incentive to settle more quickly than other class members who paid the charges and might want more. However, any incentive STA might have to minimize litigation expenses by settling early appears to be no different from that any other class member would have, and STA's incentive to maximize recovery appears to be no different either. Though the Court posits that STA might ultimately pursue theories of relief more efficient for itself at the expense of absentee class members, it does not speculate what those theories might be and none have been asserted. Such speculative conflicts are far too tenuous to render STA inadequate. The Court apparently believes the fact that STA was not

**3.** The customers assigned 100% of their claims to STA, but as part of the consideration for the assignment STA agreed to pay the assignors 70% of any net proceeds recovered and retain 30% for itself.

directly injured by Southwestern Bell's conduct and merely holds an economic interest in any recovery means that STA has a different set of priorities than other class members. But in most, if not all, commercial class actions like this one the members of the class are motivated by economic considerations. Here, STA represents five class members, and thus, if anything, is more cognizant of a greater number of economic interests than the typical class representative would be. The evidence demonstrates that the claims assigned to STA range from small to large, and supports the trial court's finding that STA has an interest in asserting the rights of all putative class members.

Southwestern Bell contends STA's thirty-percent interest in recovered funds will make it more likely to disregard a settlement paid for in coupons or credits. In support, Southwestern Bell points to an STA employee's testimony at the certification hearing that he was uncertain as to whether a coupon settlement would be proper in this case.[4] Coupon settlements, however, have not always been favored in our class-action jurisprudence. *See, e.g., General Motors Corp. v. Bloyed*, 916 S.W.2d 949, 956 (Tex.1996). A general expression of uncertainty on the hypothetical propriety of a future coupon settlement does not diminish STA's adequacy to represent the class, especially when non-cash remedies were contemplated in the assignments. STA's assignments allow it to collect its percentage from all recovered overcharges, whether recovered through

refunds or credits. Clearly non-cash remedies have not been ruled out, and the testimony of STA's employee does not indicate otherwise.

Southwestern Bell points to the fact that STA does not hold an assignment from a customer who subscribed to Hotel/Motel services and thus has no incentive to pursue such claims. However, it is highly unlikely that any potential class representative would have a claim based on all three types of subscription packages. The salient point is that the Hotel/Motel claims arise from the same unauthorized course of conduct as the other class claims, and are brought under the same statutory scheme with the same legal theories. Southwestern Bell has not articulated how the interests or claims of Smart Trunk and Digital Loop customers differ from or conflict with those of Hotel/Motel customers. *See Cardizem*, 200 F.R.D. at 306. As the trial court found, and the court of appeals agreed, 170 S.W.3d 814, 827, there is no evidence of any conflict between the Hotel/Motel customers and other members of the class. Southwestern Bell also contends its right to reallocate charges creates additional potential for conflict. Southwestern Bell argues that while it will make a refund to customers it overcharged, it has the right to reapportion the fee to customers who it essentially undercharged. According to Southwestern Bell, STA will have to make strategic decisions knowing some class members are affected differently by reallocation.[5] Of course,

---

4. That employee testified as follows:

Q: "And a coupon settlement would be proper in this case, as to what STA should receive for 30 percent interest?"
A: "I'm not certain."

5. Southwestern Bell's expert offered the following hypothetical example: if the municipal fee is $9 million and Southwestern Bell had $100 million in revenues, then South-

western Bell would charge its customers a 9% municipal charge to recoup the $9 million fee. A customer with a $100,000 bill would have had a $9,000 municipal charge without reallocation. If, however, only $90 million in revenue was appropriately subject to these charges, Southwestern Bell would then have to charge its customers a 10% municipal charge to recoup the $9 million fee. Under reallocation, if only $99,000 was taxable, then

this complaint is not unique to STA and would apply equally to any other purported class representative. In response, STA challenges whether this hypothetical reallocation could occur at all since Southwestern Bell may only "backbill" a customer for the six months prior to when the underbilling is discovered, and that period has passed. *See* 16 TEX. ADMIN. CODE § 26.27(a)(3)(C)(i). But even assuming some reallocation would occur, STA presented expert testimony that any reallocation would at most cause a minor reduction in the total amount due to a class member, and that it is highly unlikely any class member would actually have an increase in fees.[6] The expert also pointed to evidence that Southwestern Bell collected substantially more from its customers than it paid to the municipalities, making it unlikely an increase of fees would result from reapportionment, particularly if Southwestern Bell's overcollection exceeds the amount sought by the class. A potential for conflict might exist if it were shown that reallocation would result in a significantly reduced damages award for some customers and not others. But Southwestern Bell has at most shown that in the case of a hypothetical reallocation some customers might have their damages reduced by a negligible amount compared to other customers, which is not enough to disqualify STA as an adequate class representative.

Southwestern Bell also challenges whether STA and its representatives have the qualifications, background, and interest to represent the class and supervise class counsel, pointing to the testimony of an STA employee, Mike Shelton, that "we're here at the disposal of the lawyers."

TEX.R. CIV. P. 42(a)(4). However, quoted in full, Shelton's statement demonstrates that he is aware of his duty "[t]o vigorously represent the class, to put their needs above ours, to—as we're doing today, we're here at the disposal of the lawyers, at the disposal of the Court to vigorously pursue this case and protect the class rights." Southwestern Bell claims another employee, Mark Wilder, lacks familiarity with the surrounding facts and legal theories. However, Wilder possesses knowledge and expertise regarding the billing procedures at issue in this case, which are not common knowledge nor widely known to members of the putative class. The evidence supports the trial court's determination that STA is an appropriate class representative, and the testimony of its employees does as well.

In sum, the speculative conflicts the Court and Southwestern Bell hypothesize between STA and the other class members are too tenuous to render it an inadequate class representative. Considering the absence of any realistic potential for conflict or antagonism between STA and the class, together with STA's demonstrated superior expertise in the subject matter of the litigation, I would hold that STA has satisfied the adequacy requirement and affirm certification of the class. Because the Court concludes otherwise, I respectfully dissent.

---

that customer would have to pay a $9,900 municipal charge.

**6.** For example, for USAA, a large customer-assignor, damages with reallocation would be

$2,560.67 and damages without reallocation would be $2,563.74. For Ridgeway Bank, a small customer-assignor, damages with reallocation would be $99.66 and damages without reallocation would be $102.59.